COLORADO INSURANCE GROUP, INC., et al., Plaintiffs,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 7544.

United States District Court
D. Colorado.

March 6, 1963.

George F. Barbary, Richard H. Bate, Denver, Colo., for plaintiff.

Lawrence M. Henry, U. S. Atty., Michael C. Vellano, Asst. U. S. Atty., Denver, Colo., and William A. Gershuny, Dept. of Justice, Washington, D. C., for defendant.

ARRAJ, Chief Judge.

This matter is before the Court on the defendant's motion to dismiss the action on the grounds that (1) the Court lacks jurisdiction because the defendant has not waived immunity from suit or consented to be sued upon the claim or claims set forth in the complaint; that (2) the complaint fails to state a claim against the defendant for which relief can be granted; and that (3) the Court lacks jurisdiction because the complaint asserts a claim which arose more than two years prior to the institution of this action and, therefore, is barred by the statute of limitations set forth in Title 28 of the United States Code at Section 2401.

The plaintiffs instituted this action to recover damages for the asserted "destruction" of the plaintiffs' business resulting from allegedly tortious conduct on the part of certain agents and employees

of the Securities and Exchange Commission. The action, brought for the recovery of damages in the amount of $25,000,000.00, purportedly may be entertained by this Court pursuant to the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 2671 and related provisions), which confers jurisdiction upon federal district courts to consider claims against the United States " * * * for injury or loss of property, or personal injury * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The complaint alleges that the ten corporate plaintiffs, although separate entities for business and tax purposes, "were and at all times were intended to be operated as a closely knit financial empire dependent upon each other and particularly on plaintiff, Allen Investment Company, whose Board Chairman was also the Board Chairman of the other corporations;" it is further alleged that "on October 21, 1959, all of the plaintiff corporations were successfully engaged in business for profit in the manner set forth above." The averments of the complaint then indicate that, commencing on October 22, 1959, "after a fifteen-month unsuccessful investigative attempt to find technical legal infractions in the business and stock activities of the plaintiffs," the defendant, through agents of the Regional Office of the Securities and Exchange Commission at Denver, Colorado, who were acting within the scope of their employment, began and still continues to perform certain enumerated acts which tortiously interfere with the business operations of the plaintiffs.

The defendant, in addition to asserting the statute of limitations as a bar to many of the acts complained of the plaintiffs, maintains that the activities of its agents and employees fell within the discretionary function exception to the Act (28 U.S.C. § 2680(a)), which provides as follows:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Next, the defendant directs the Court's attention to the enumerated exceptions set forth in 28 U.S.C. § 2680(h); this provision of the Act contains the following exclusions:

"(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

The Government contends that each claim asserted by the plaintiffs falls not only within the discretionary function exception to the Act, but also within one or more of the enumerated exceptions in Section 2680(h). Also, it suggests that the agents and employees of the Securities and Exchange Commission, whose acts provide the basis for the complaint, are absolutely immune from liability, and, therefore, under the doctrine of *respondeat superior*, the United States cannot be liable under the Federal Tort Claims Act.

The plaintiffs' position seems to be that the complaint alleges acts which show "a pattern either of careless disregard of their effect on the plaintiffs or a conspiracy to injure the plaintiffs;" consequently, the acts allegedly were "sufficiently connected so that they may be viewed as a single continuing tort, all of the acts, and the pattern of conduct

which they evidence, being the proximate cause of the injury and damage to the plaintiffs."

More specifically, the plaintiffs, in their brief, maintain that the complaint actually describes a tortious four-pronged attack on the plaintiffs' business operations by agents and employees of the Securities and Exchange Commission and the defendant.

1. The complaint is said to outline the first stage of the conspiracy by alleging the issuance of an ex parte restraining order by a federal court "based upon false allegations and an erroneous interpretation of applicable law" and which had "the natural effect of creating suspicion and fear in the mind of the public generally;" and as a result thereof, a settlement was allegedly forced upon plaintiff Allen Investment Company. (Paragraph 5 and subparagraphs thereof.)

2. The plaintiffs' averments were intended to depict further a concurrent and indirect plot on the part of said agents and employees to hinder the plaintiffs' business activities. This part of the general scheme is alleged to consist, first, of interference with the plaintiffs' business by "leveling intimidations and accusations to and against employees, key personnel, officers, directors and shareholders of plaintiffs' and other associated, affiliated or connected corporations;" next, the defendant's agents allegedly engaged in "the creations of suspicion and ill will in the various other state and federal agencies whose good opinion was essential to the operation of the business of the plaintiffs," carried out by means of "false accusations, suspicions, innuendoes and derogatory assertions to said agencies." (Paragraph 6.)

3. Another method of "attack" indicated by the complaint is a conspiracy to submit "injuriously false information to a federal grand jury which thereafter returned a criminal indictment" against certain officers of the various plaintiff corporations, resulting in the filing of a criminal indictment which, at the time of the filing of the complaint, the defendant's agents tortiously continued to press. (Paragraphs 7 and 8.)

4. The fourth "prong" of the alleged campaign against the plaintiffs is purportedly described in the complaint as the improper interference and delay by the Securities and Exchange Commission and its employees in reorganization proceedings involving Magic Mountain, Inc., one of the plaintiffs' associated corporations. The complaint is said to indicate that the reorganization proceedings were used as a vehicle by the defendant's agents "for publicizing and calling attention to various implications of mismanagement on the part of the officers and directors of Magic Mountain, Inc., and the other plaintiff corporations." (Paragraph 9.)

In summary, the plaintiffs take the position that the complaint makes it clear that the acts described therein were "a planned, coordinated and successful campaign, either directly intended to destroy the business of the plaintiffs or carried out with a reckless disregard of the effect on the plaintiffs' business operations."

In determining this matter, the Court notes, first, that some doubt has been cast upon the ability of the Government to be engaged in a conspiracy for which an action may be brought under the Federal Tort Claims Act; Radford v. United States, 5 Cir., 1959, 264 F.2d 709. But, in the instant case, even greater significance lies in the fact that most aspects of the alleged conspiracy, as it is particularized by the plaintiff, constitute claims which fall within the statutory exclusion to the Act set forth in Section 2680(a) and (h).

It has been recognized, of course, that concerted action may, in many instances, give rise to a civil claim for relief sounding in tort; Prosser on Torts, Section 46 (2d ed., 1955). Furthermore, an action for civil relief arising from a conspiracy has not been specifically excepted by the provisions of the Tort Claims Act. But, when certain of the activities contributing to allegedly tortious concerted effort are expressly excluded as a basis

for recovery by the Act, it would necessarily follow that no relief may be afforded therefor which may be in any way related to such statutory prohibition; otherwise, the purpose of the enactment's exceptions could readily be ignored through the manipulative effects of pleading concerted action. Indeed, the complaint presently before the Court suggests that substantial attention was devoted to notions gleaned from texts and commentaries, as well as to the exceptions of the Act themselves, in formulating the averments to correspond with theories upon which relief could be predicated.

Thus, artful drafting of a complaint, which may lend itself to avoiding the consequences of the exceptions of Section 2680 by shielding excluded claims behind a single all-encompassing count alleging conspiracy or "continuing tort", will not, in this instance, be an effective means for circumventing the provisions of the Act; and any claims for which relief may be granted herein cannot flow from such exclusions. Cf., Tinkoff v. United States, 7 Cir., 1954, 211 F.2d 890. It is therefore necessary to determine which of the averments in the complaint, in substance, relate to a common legal right that is excepted by Section 2680 of the Act.

One of the most recent guidelines regarding the exceptions to the Federal Tort Claims Act was announced by the Supreme Court in United States v. Neustadt, 1961, 366 U.S. 696 at page 708, 81 S.Ct. 1294 at page 1301, 6 L.Ed. 2d 614, when, in dealing with a claim "arising out of" misrepresentation, it quoted as follows:

"'There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation.' Indian Towing Co. v. United States, 350 U.S. 61, 68 [76 S.Ct. 122, 100 L.Ed. 48]."

In an earlier decision, Dalehite v. United States, 1953, 346 U.S. 15, at pages 30–31, 73 S.Ct. 956, at page 965, 97 L.Ed. 1427, the Court declared:

"Through such statutes that change the law, organized government expresses the social purposes that motivate its legislation. Of course, these modifications are entitled to a construction that will accomplish their aim, that is, one that will carry out the legislative purpose of allowing suits against the Government for negligence with due regard for the statutory exceptions to that policy. In interpreting the exceptions to the generality of the grant, courts include only those circumstances which are within the words and reason of the exception. They cannot do less since petitioners obtain their 'right to sue from Congress (and they) necessarily must take it subject to such restrictions as have been imposed.' Federal Housing Administration v. Burr, 309 U.S. 242, 251 [60 S.Ct. 488, 84 L.Ed. 724].

"So, our decisions have interpreted the Act to require clear relinquishment of sovereign immunity to give jurisdiction for tort actions."

Finally, the theory underlying the exemptions of the Act, as they were embodied in one of the many prior bills, looked upon the legislation as a "radical innovation" justifying the exemption of certain actions "which might give rise to tort claims that would be difficult to defend, or in respect to which it would be unjust to make the Government liable." Hearings before Subcommittee No. 1 of the Committee on the Judiciary, House of Representatives, 76th Cong., 3d Sess., on H.R. 7236, p. 22.

■ Thus, with the foregoing general criteria in mind, it is noted that the first phase of the alleged "attack" by the defendant's agents consists of averments which refer to various wrongful acts performed by those agents in acquiring and using judicial process to cause financial damage to the plaintiffs. While certain portions of these allegations appear to fall within the discretionary function

exception of Section 2680(a), the general nature of this group of averments seems to lie more fully within the purview of the Section 2680(h) exceptions. Likewise, although several of these allegations seem to be assertions of the misrepresentation or deceit exceptions to Section 2680(h), the over-all impact of these claims suggests the abuse of process as that exclusion appears in the section. In essence, it is alleged that the defendant at first pursued a scheme involving the misuse or misapplication of process "justified in itself for an end other than that which it was designed to accomplish," a distinguishing feature which characterizes the tort action for abuse of process; Prosser on Torts, supra, Section 100, pp. 667, 668. See also 1 Harper and James, Law of Torts, Section 4.9 (1956); Restatement of Torts, Section 682; 1 Am.Jur.2d, Abuse of Process; 72 C.J.S. Process, §§ 119, 120 b. Therefore, we conclude that the portion of the complaint which describes the first method used by the defendant's agents to damage the plaintiffs is expressly excepted by Section 2680(h) from the Government's waiver of immunity under the Tort Claims Act.

The next means of harassment, involving intimidations and accusations made to and against employees, key personnel and shareholders of the plaintiff corporations, and the improper communication of derogatory assertions to other governmental regulatory agencies, is alleged to "tortiously interfere with plaintiffs' business." The Government takes the position that such averments, in fact, are libel and slander, as well as interference with contract rights within the meaning of Section 2680(h); and it also asserts that the alleged activities come within the discretionary function exception of Section 2680(a). The plaintiffs, though, maintain that the torts of injurious falsehood or disparagement and interference with prospective advantage are alleged and, therefore, are not excluded from the purview of the Act.

We perceive this "prong" of the alleged "attack" to involve, in substance, a claim drafted with the intended purpose of being in the nature of interference with prospective business advantage and consisting, in part, of what has been characterized as injurious falsehood. See Prosser on Torts, supra, Sections 107, 108; 30 Am.Jur., Interference, Section 43; 1 Harper and James, supra, Sections 6.1, 6.11; compare Original Ballet Russe v. Ballet Theatre, 2 Cir., 1943, 133 F.2d 187. For example, there is nothing in these averments which indicates that the alleged intimidations and accusations, directed at the plaintiffs' business "family" interfered with any specific contractual relations, employment or otherwise. Nor does it appear from the complaint that the accusations and derogatory assertions imputed reprehensible characteristics to the plaintiff amounting to defamation; instead, the action complained of may simply have cast reflections upon the character of the plaintiffs' business as such and merely have been disparagement or injurious falsehood. See Prosser on Torts, supra, Section 108, p. 762; 1 Harper and James, supra, Section 6.1., pp. 480, 481. From the face of the complaint, then, this segment of the asserted conspiracy cannot be said to consist of any exclusions to the Tort Claims Act.

Admittedly, there are similarities between the tort characterized as interference with prospective advantage and the one described as interference with contractual relations as it is set forth in Section 2680(h). For instance, the development of both has been parallel; Prosser on Torts, supra, pp. 724, 725, 748, 749. It is therefore understandable that these two claims for relief could be viewed as identical in nature for purposes of being excluded from the Act; see Builders Corporation of America v. United States, D.C.N.D.Cal.1957, 148 F.Supp. 482, especially Note 1.

However, a claim of interference with prospective advantage may contemplate matters which would not automatically fall within the purview of an action for interference with contractual rights. See 9 A.L.R.2d 228, 255; Restatement of Torts, Section 766 and the commentary

thereto. Hence, a mere allegation of interference with prospective advantage should not be construed to necessarily fall within the statutory exception pertaining to interference with contractual rights; Builders Corporation of America v. United States, 9 Cir., 1958, 259 F.2d 766, reversing Builders Corporation of America v. United States, supra.

Insofar as the defendant's motion to dismiss suggests that these averments of interference with the plaintiffs' business through intimidation and injurious falsehood are excluded by the discretionary function exception of Section 2680(a), it does not appear that such a finding can be made at this point in the litigation. The plaintiffs complain that this conduct was attributable to the defendant through *agents* of the Securities and Exchange Commission; since their activities may well have occurred at the so-called "operational level", further development of the facts may demonstrate that the discretionary function exception is not applicable. Cf. Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48; see also United States v. Gregory, 10 Cir., 1962, 300 F.2d 11.

■ Therefore, that part of the plaintiffs' conspiracy count based upon the averments of the complaint which constitute a claim for interference with the plaintiffs' business through intimidation and injurious falsehood on the part of the defendant's agents, where the factual allegations neither indicate an interference with any contract rights, the pursuit of a discretionary function nor other activities giving rise to claims excluded by Section 2680, should not be dismissed at this time. But if it should subsequently appear, as the facts are developed and presented herein, that this alleged interference with business operations actually involved interference with contractual relations, defamation or the exercise of a discretionary function, the Court will be without jurisdiction over the claim and a dismissal will then be indicated; cf. Knierim v. United States, D.C.Colo., No. 7624, Order entered by Judge Doyle, November 13, 1962. Mere selective pleading cannot be used to defeat the substance of Section 2680(h). Furthermore, the Government's other defenses, including the statute of limitations as a bar to certain claims, may affect the plaintiffs' present right to assert this claim when the factual picture becomes clear.

■ The third alleged effort of the defendant's agents to hinder the plaintiffs' enterprises, through wrongful conduct which resulted in the return of a federal grand jury criminal indictment against several officers of the plaintiff corporations, seems to be barred as a claim by the abuse of process or the malicious prosecution exceptions of Section 2680(h). From the pleadings it appears that the plaintiffs complain of either the malicious institution of criminal proceedings without probable cause or the use of legal process to accomplish a purpose for which it was not designed. See Prosser on Torts, supra, Sections 98, 100; 1 Harper and James, supra, Sections 4.1, 4.9. While certain elements essential to these two excluded torts may not be specified among the pleaded facts themselves, the general tenor of the averments corresponds with those statutory exceptions in substance, and any final disposition of this claim will necessarily involve matters encompassing the elements which are now lacking. For example, if the alleged criminal proceedings are shown to have terminated in favor of the plaintiffs, this portion of the complaint seeks, in essence, relief for malicious prosecution; but if it is eventually demonstrated that the proceedings resulted unfavorably to the plaintiffs' officers, the claim would then be for the misapplication of judicial proceedings for an end other than that which it was designed to accomplish, the abuse of the legal process. Hence, the factual picture to be developed from these allegations will eventually reflect a claim based upon either one exemption or the other. Under these circumstances, we view these allegations of the complaint as falling within the exceptions of Section 2680(h).

■ The final method whereby the alleged campaign against the plaintiffs is

said to be carried on involves a dual aspect. In the first place, the plaintiffs have asserted that the defendant, through the Securities and Exchange Commission, has and still continues to interfere with the reorganization procedures relating to one of the corporations associated with the plaintiffs. The Commission, though, has been specifically authorized to participate in such corporate reorganization proceedings; 11 U.S.C. §§ 571–575, 579. Thus, any participation thereunder by the Commission itself would be within its discretionary capacity and, therefore, excluded from the operation of the Federal Tort Claims Act by Section 2680(a); see Schmidt v. United States, 7 Cir., 1952, 198 F.2d 32, cert. den. 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693.

However, the plaintiffs have further alleged that, during these reorganization proceedings, the defendant's agents falsely implied or stated for public consumption certain facts relating to the possession of secret information of mismanagement on the part of officers of the plaintiff corporations. As suggested heretofore, such conduct may well have occurred at the so-called "operational level", and avoided the discretionary function exception of Section 2680(a). But the allegations specifically complain of statements and implications relating to mismanagement of the plaintiffs' business affairs, a reprehensible characteristic directed at the plaintiff corporations' prestige and standing in commercial circles; such an averment states a claim for defamation. Prosser on Torts, supra, pp. 578, 579. Accordingly, this part of the final thrust of the alleged "attack" upon the plaintiffs' business is also excepted from the Act by Section 2680(h) as either libel or slander, and for this reason, the averments related thereto also lie outside the scope of tort actions which the Court has jurisdiction to entertain.

In view of the foregoing analysis, it is

ORDERED that the defendant's motion to dismiss, insofar as it alleges that the complaint fails to state a claim for which the Court can grant relief under the Federal Tort Claims Act, be, and the same hereby is, granted with regard to the first, third and final portions of the alleged conspiracy or "continuing tort". (Paragraphs 5, 7, 8 and 9.) It is

Further ordered that the defendant's motion to dismiss be, and the same hereby is, denied insofar as it alleges that the second part of the alleged conspiracy or "continuing tort" set forth in the complaint (Paragraph 6) fails to state a claim for which relief can be granted under the Federal Tort Claims Act. It is finally

Ordered and directed that plaintiffs recast the complaint within 30 days to aver, in appropriate paragraphs, the claim that is not hereby dismissed (Paragraph 6 of the original complaint), clearly and concisely pursuant to Rule 10(b) of the Federal Rules of Civil Procedure.