FILED
United States Court of Appeals
Tenth Circuit

July 26, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSEPH T. MECCA,

      Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA;
MICHAEL J. STARKEY; JOHN A.
JOHNSON; JAMES TERRIO; JACK
MARKUSFELD; JOHN CHO,

      Defendants-Appellees.

No. 09-1569
(D.C. No. 1:08-CV-02813-REB-CBS)
(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

---

Joseph T. Mecca, a former radiologist at Evans Army Community Hospital

(Evans Army) in Fort Carson, Colorado, appeals the dismissal of his suit brought

under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b) and 2671-2680,

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Dr. Mecca initiated this action after he resigned from Evans Army, but the district court dismissed the FTCA claims for lack of jurisdiction and the *Bivens* claim for failure to state a claim for relief. On appeal, Dr. Mecca contends the district court dismissed his suit by applying an overly restrictive pleading standard. We conclude the district court correctly evaluated Dr. Mecca's allegations, both jurisdictional and factual, and accordingly, we affirm. We remand, however, to modify dismissal of the FTCA claims to be without prejudice.

## I

As alleged in the amended complaint, Dr. Mecca worked under contract as a civilian radiologist at Evans Army. A year after obtaining staff privileges, Dr. Mecca misdiagnosed a patient. He was advised by the Chief of Radiology, Major Michael Starkey, that he could resign without adverse consequences or face investigation, suspension, and referral to the National Practitioners Data Bank and state licensing authorities. Dr. Mecca opted to resign, but Starkey went ahead with proceedings to hold his privileges in abeyance pending the outcome of an investigation and peer review. Dr. Mecca learned of the abeyance from Colonel John Johnson, the Deputy Commander for Clinical Services, and although he protested the measure based on the assurances given by Starkey, his complaints went unanswered. Receiving no response, Dr. Mecca assumed the matter had

been put to rest until he was notified by Colonel Jack Markusfeld that his privileges had been suspended because he resigned during the investigation.

Once the investigation was concluded, Colonel James Terrio notified Dr. Mecca that the matter had been referred to a peer review committee. Thereafter, Colonel John Cho, Commander of the Army Medical Department, confirmed that Dr. Mecca's suspension was precipitated by his resignation during the abeyance proceedings. Although Colonel Cho informed Dr. Mecca that he had the right to a hearing before a credentials committee, he never received one. Eventually, the Army referred the matter to the Surgeon General of the United States, but the Surgeon General's office found insufficient evidence to support the suspension. By that time, though, Dr. Mecca was unable to find a new job, and he thus sought redress through the courts.

In his amended complaint, Dr. Mecca pleaded eight claims under the FTCA and a ninth claim under *Bivens*. The first three FTCA claims alleged negligence per se for violations of Army Regulation (AR) 40-68, specifically, Chapter 10-6(a)(4) for the government's wrongful suspension of his privileges following his resignation; Chapter 10-6(f) for the government's failure to notify him of the peer review process and right to participate in that process; and Chapter 10-7(a) for the government's failure to inform him of the "deficiencies in his diagnosis . . . and his right [to] request and be present at a formal hearing," Aplt. App. at 35. Three additional FTCA claims alleged general negligence on similar grounds.

-3-

The seventh FTCA claim charged a civil conspiracy to violate AR 40-68, and the last FTCA claim, styled "Interference with Prospective Business Advantage," accused the government of preventing Dr. Mecca from forming employment contracts with other hospitals. As for the individual defendants, Dr. Mecca charged under *Bivens* that he was deprived of protected liberty and property interests without due process of law.

On defendants' motions, the district court dismissed the case. The court ruled it lacked subject matter jurisdiction over the first seven claims because the FTCA imposes liability in accordance with state law, but the amended complaint cited no source of substantive state liability. The court also noted the civil conspiracy claim failed to state a claim absent any facts "suggesting a meeting of the minds between defendants as to the object of the conspiracy." *Id.* at 239. Additionally, the court determined the prospective business advantage claim was excepted from the FTCA because it sought to vindicate contract rights, while the *Bivens* claim was deficient under Fed. R. Civ. P. 12(b)(6) because it failed to allege a constitutionally recognized property or liberty interest.

**II**

We review de novo dismissals for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004). We likewise review de novo dismissals under Fed. R. Civ. P. 12(b)(6). *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009),

-4-

*cert. denied*, 130 S. Ct. 1142 (2010).  Under both subsections of Rule 12(b), all well-pleaded allegations are accepted as true and viewed in the light most favorable to the non-moving party.  *Id.* at 1097-98.

## A.  FTCA Claims

### 1.  Claims 1-7

We begin with the FTCA claims alleging negligence per se, negligence, and civil conspiracy.  It is clear that no action may lie against the United States unless authorized by Congress.  *Miller v. United States*, 463 F.3d 1122, 1123 (10th Cir. 2006).  Congress has, in the FTCA, granted a limited waiver of sovereign immunity for claims against the government

> for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*.

28 U.S.C. § 1346(b)(1) (emphasis added).  The phrase "law of the place" refers to the law of the State where the act or omission occurred.  *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994); *Union Pac. R.R. Co. v. U.S. ex rel. U.S. Army Corp. of Eng'rs*, 591 F.3d 1311, 1315 (10th Cir. 2010).  Thus, we consult state law to determine substantive liability under the FTCA.  *Miller*, 463 F.3d at 1123.

Dr. Mecca, however, claimed only violations of AR 40-68, which, as a federal regulation, cannot impose liability under the FTCA. *See Klepper v. City of Milford*, 825 F.2d 1440, 1448 (10th Cir. 1987) ("[W]here a negligence claim is based on a violation of a federal statute or regulation, no claim will lie under the FTCA in the absence of some other duty under the applicable state law."); *see also United States v. Agronics Inc.*, 164 F.3d 1343, 1347 (10th Cir. 1999) (recognizing there can be no recovery for alleged violations of federal statutory or regulatory duties absent a "specific basis for concluding that similar conduct by private persons . . . would be actionable under state law" (quotation omitted)). Dr. Mecca's reliance on a federal regulation, without any analogous state law duty, failed to bring the first seven claims within the scope of the FTCA's waiver of sovereign immunity and thus failed to invoke the court's jurisdiction. *See Ayala v. United States*, 49 F.3d 607, 610 (10th Cir. 1995) (recognizing absence of federal jurisdiction unless state law recognizes a comparable private tort).

Dr. Mecca disputes this result and cites the Colorado Professional Review Act (CPRA), Colo. Rev. Stat. § 12-36.5-101 to -106, as an analogous source of state liability for purposes of the FTCA. The problem, however, is he never mentioned this or any other state law in his amended complaint. Instead, he pursued purely federal regulatory violations under AR 40-68, even after the government highlighted the deficiency in his original complaint. Dr. Mecca imparts knowledge of "Colorado law," presumably the CPRA, to the district court

because he cited that statute in his response to the government's motion to dismiss. Aplt. Br. at 16 n.2. But the claim should have been made in the amended complaint. *See Swoboda v. Dubach*, 992 F.2d 286, 290-91 (10th Cir. 1993) (restricting analysis of the sufficiency of claims to the allegations in the complaint). In any event, the argument is unavailing, as the CPRA does not create a private cause of action for the claims Dr. Mecca presents here. *See N. Colo. Med. Ctr., Inc. v. Nicholas*, 27 P.3d 828, 840-41 (Colo. 2001) ("[T]he CPRA is designed to protect *medical patients* from unprofessional conduct by persons licensed to practice medicine." (emphasis added, quotation omitted)).

## 2. Civil Conspiracy

Apart from the absence of any substantive liability under the FTCA, Dr. Mecca's civil conspiracy claim also suffers from another pleading deficiency. Dr. Mecca was obliged to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In Colorado, a claim of civil conspiracy requires a plaintiff to show:

> (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result.

*Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 674-75 (Colo. App. 1999). The amended complaint, however, alleges nothing to plausibly suggest defendants

agreed on an object of the putative conspiracy. Instead, it generally avers that

defendants "agreed, by words or conduct, to accomplish an unlawful goal or

accomplish a goal through unlawful means." Aplt. App. at 38. But this is a mere

"formulaic recitation," *Twombly*, 550 U.S. at 555, of Colorado's minimum

pleading standard for civil conspiracy claims, *see Scott v. Hern*, 216 F.3d 897,

918 (10th Cir. 2000) ("[Plaintiff] must at the very least allege 'a course of

conduct and other circumstantial evidence providing some indicia of agreement in

an unlawful means or end.'" (quoting *Schneider v. Midtown Motor Co.*, 854 P.2d

1322, 1327 (Colo. App. 1992) (ellipsis and brackets omitted))). Even

Dr. Mecca's strongest allegation—that "Starkey, Johnson, and/or Markusfeld"

caused adverse action to be taken against him "in furtherance of the goal of

revoking [his] privileges"—fails to suggest a meeting of the minds. Aplt. App. at

28. At most, this might suggest the suspension was unlawful, but we cannot infer

from defendants' independent acts an agreement to realize that goal. *See Nelson

v. Elway*, 908 P.2d 102, 106 (Colo. 1995) ("The court will not infer the agreement

necessary to form a conspiracy.").

### 3. Interference with Prospective Business Advantage

As for the interference with prospective business advantage claim, the

district court determined it was barred because, notwithstanding its title, it alleged

interference with contract rights. *See* 28 U.S.C. § 2680(h) (restricting "[a]ny

claim arising out of . . . interference with contract rights"). Dr. Mecca disputes

this characterization and distinguishes his claim as presenting a distinct tort for interference with prospective business advantage. He cites *Colorado Insurance Group v. United States*, 216 F. Supp. 787, 792-93 (D. Colo. 1963), where the court acknowledged overlapping boundaries between contract claims and interference with prospective business advantage claims, and asserts that like the plaintiffs in *Colorado Insurance Group*, he seeks to recover for interference with prospective business advantage.

As pleaded, however, Dr. Mecca's claim expressly accused the government of "prevent[ing] the formation of an employment contract with other hospitals." Aplt. App. at 39. It alleged the government interfered with his "ability to gain privileges at other hospitals," which caused "damages in the form of lost wages, impaired ability to earn a living, and other economic damages." *Id.* This claim clearly seeks to vindicate prospective employment contracts allegedly impeded or prevented by the government's conduct. It is thus is a claim for interference with contract rights barred by § 2680(h). *See Cooper v. Am. Auto. Ins. Co.*, 978 F.2d 602, 613 (10th Cir. 1992).

### 4. Nature of Dismissal

The last issue bearing on the FTCA claims is the district court's dismissal of these claims with prejudice. "A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction . . . the dismissal must be without prejudice." *Brereton v. Bountiful City Corp*,

434 F.3d 1213, 1216 (10th Cir. 2006).  Here, because the district court found itself without jurisdiction over the FTCA claims, dismissal should have been entered without prejudice, even if the court deemed further amendment futile. *See id.* at 1219.  We therefore remand with instructions to enter dismissal of these claims without prejudice.[2]

## B.  Due Process Under *Bivens*

Finally, Dr. Mecca challenges the dismissal of his due process claim for failure to allege a cognizable property or liberty interest.[3]  A successful procedural due process claim requires a plaintiff to show (1) the deprivation of a liberty or property interest and (2) the absence of due process.  *Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007).  Protected property interests require "a legitimate claim of entitlement," created not by the Constitution but by independent sources such as statute, municipal ordinance, or contract.  *Nichols v. Bd. of County Comm'rs*, 506 F.3d 962, 969-70 (10th Cir.

---

[2]     One might argue that dismissal without prejudice of the FTCA claims—indeed, the *Bivens* claim as well—precludes appellate review, since such dismissals usually are not final decisions.  We have jurisdiction, however, because the dismissal order finally disposed of the case and effectively excluded Dr. Mecca from federal court.  *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1275 (10th Cir. 2001).

[3]     Defendants contend dismissal of this claim may be affirmed on any of three alternate grounds:  (1) the complaint failed to allege personal participation by defendants; (2) defendants were entitled to qualified immunity; and (3) the claim is barred by Colorado's two-year statute of limitations.  Our disposition obviates any need to consider these issues.

2007) (quotation omitted). "However, if an employee voluntarily relinquishes a property interest, then no procedural due process violation has occurred." *Narotzky v. Natrona Cnty. Mem'l Hosp.*, ___ F.3d___, 2010 WL 2510659, at *5 (10th Cir. June 23, 2010).

Here, although Dr. Mecca was working as an independent contractor when he resigned from Evans Army, he does not contend his contract created a property interest. Instead, he points to a provision of AR 40-68 that, according to him, required "reasonable cause" to suspend his privileges. Aplt. Br. at 28. He also asserts AR 40-68 conditioned the government's authority to alter his staff privileges on unsatisfactory patient care. *Id.* at 27. These limits on government authority, Dr. Mecca contends, constitute a protected property interest because they restrict the Army's ability to adversely affect his privileges. The problem with this argument, however, is that once again, none of these allegations are in the amended complaint. Dr. Mecca answers that he was not required to specifically cite the "reasonable cause" standard in the amended complaint, but "[t]he court's function on a Rule 12(b)(6) motion is . . . to assess whether *the plaintiff's complaint alone* is legally sufficient to state a claim for which relief may be granted," *Swoboda*, 992 F.2d at 290. Thus, contrary to Dr. Mecca's assertion, he was required to plead these allegations in his amended complaint.

Nevertheless, even if Dr. Mecca had alleged a protected property interest was created by AR 40-68 or his contract, his claim would still fail because he

-11-

resigned. Indeed, Dr. Mecca's resignation voluntarily relinquished any interest he may have had. *See Narotzky*, 2010 WL 2510659, at *5; *McBeth v. Himes*, 598 F.3d 708, 723 (10th Cir. 2010) (holding that one who voluntarily relinquishes some property or liberty interest cannot claim a due process violation because there was no official deprivation). Accordingly, whether it be for the absence of a protected property interest or the voluntary relinquishment of any such interest, the claim was subject to dismissal under Rule 12(b)(6).[4]

The liberty interest claim suffers from similar deficiencies. Dr. Mecca predicates his claim on the harm done to his professional reputation and information reported to the Surgeon General, which he contends has impeded his ability to earn a living and practice his profession. To show a deprivation of one's liberty interest in professional reputation, a plaintiff must demonstrate (1) "statements [that] impugn the good name, reputation, honor, or integrity of the employee"; (2) "the statements [were] false"; (3) the "statements . . . occur[red] in the course of terminating the employee or must foreclose other employment opportunities"; and (4) "the statements [were] published." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 579 (10th Cir. 1996) (quotation omitted).

---

[4] Dr. Mecca does not frame his claim as a constructive discharge, perhaps because this court has not before recognized a cause of action for the denial of procedural due process based on the constructive discharge of an independent contractor. *See Narotzky*, 2010 WL 2510659, at *5 n.3.

-12-

Dr. Mecca claimed hospitals decline to hire him when they learn of his suspension and he cannot find work due to the defendants' actions. There is no indication who published the information, however. Instead, Dr. Mecca simply concludes that based on defendants' actions, "the Army submitted [his] name to the . . . Surgeon General." Aplt. App. at 31. But there must be something to plausibly suggest that *these* defendants published false information about the suspension. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (explaining that *Twombly*'s plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"); *see also Ridge at Red Hawk, L.L.C., v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) ("[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."). Indeed, *Twombly*'s plausibility standard requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Vague allegations against the entire Army do not suffice. Dr. Mecca asserts he could show defendants' culpability with discovery, but "[Fed. R. Civ. P.] 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. Dr. Mecca "has alleged—but . . . has not shown—that [he] is entitled to relief," *id.* (brackets and internal quotation marks omitted), and as a consequence, the district court was correct to dismiss the claim.

**III**

The judgment of the district court is AFFIRMED, but the case is REMANDED to the district court with instructions to modify dismissal of the FTCA claims to be without prejudice.

Entered for the Court

Stephen H. Anderson
Circuit Judge