## INDIAN TOWING CO., INC., ET AL. v.
## UNITED STATES.

No. 8. Argued February 10, 1955; affirmed by an equally divided
Court April 11, 1955; rehearing granted May 16, 1955; reargued
October 13, 1955.—Decided November 21, 1955.

*Richard B. Montgomery* argued the cause for peti-
tioners. With him on the brief was *Cicero C. Sessions.*

*Lester S. Jayson* argued the cause for the United States.
With him on the brief were *Solicitor General Sobeloff,
Assistant Attorney General Burger* and *Paul A. Sweeney.*

Mr. Justice Frankfurter delivered the opinion of
the Court.

Petitioners brought suit in the United States District
Court for the Southern District of Mississippi, seeking

recovery under the Federal Tort Claims Act, 28 U. S. C. § 1346 (b), for damages alleged to have been caused by the negligence of the Coast Guard in the operation of a lighthouse light. They alleged that on October 1, 1951, the tug *Navajo,* owned by petitioner Indian Towing Company, was towing *Barge AS–16,* chartered by petitioner Upper Mississippi Towing Corporation; that the barge was loaded with a cargo of triple super phosphate, consigned to petitioner Minnesota Farm Bureau Service Company and insured by petitioner United Firemen's Insurance Company; that the tug *Navajo* went aground on Chandeleur Island and as a result thereof sea water wetted and damaged the cargo to the extent of $62,659.70; that the consignee refused to accept the cargo; that petitioners Indian Towing Company and Upper Mississippi Towing Corporation therefore became responsible for the loss of the cargo; and that the loss was paid by petitioner United Firemen's Insurance Company under loan receipts. The complaint further stated that the grounding of the *Navajo* was due solely to the failure of the light on Chandeleur Island which in turn was caused by the negligence of the Coast Guard. The specific acts of negligence relied on were the failure of the responsible Coast Guard personnel to check the battery and sun relay system which operated the light; the failure of the Chief Petty Officer who checked the lighthouse on September 7, 1951, to make a proper examination of the connections which were "out in the weather"; the failure to check the light between September 7 and October 1, 1951; and the failure to repair the light or give warning that the light was not operating. Petitioners also alleged that there was a loose connection which could have been discovered upon proper inspection.

On motion of the respondent the case was transferred to the United States District Court for the Eastern District of Louisiana, New Orleans Division. Respondent

then moved to dismiss on the ground that it had not consented to be sued "in the manner in which this suit is brought" in that petitioners' only relief was under the Suits in Admiralty Act, 41 Stat. 525, or the Public Vessels Act, 43 Stat. 1112. This motion was granted and the Court of Appeals for the Fifth Circuit affirmed *per curiam*. 211 F. 2d 886. Because the case presented an important aspect of the still undetermined extent of the Government's liability under the Federal Tort Claims Act, we granted certiorari, 348 U. S. 810. The judgment of the Court of Appeals was affirmed by an equally divided Court, 349 U. S. 902, but a petition for rehearing was granted, the earlier judgment in this Court vacated, and the case restored to the docket for reargument before the full Bench. 349 U. S. 926.

The relevant provisions of the Federal Tort Claims Act are 28 U. S. C. §§ 1346 (b), 2674, and 2680 (a):

§ 1346 (b). ". . . the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

§ 2674. "The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

.          .          .          .          .

§ 2680. "The provisions of this chapter and section 1346 (b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

The question is one of liability for negligence at what this Court has characterized the "operational level" of governmental activity. *Dalehite* v. *United States,* 346 U. S. 15, 42. The Government concedes that the exception of § 2680 relieving from liability for negligent "exercise of judgment" (which is the way the Government paraphrases a "discretionary function" in § 2680 (a)) is not involved here, and it does not deny that the Federal Tort Claims Act does provide for liability in some situations on the "operational level" of its activity. But the Government contends that the language of § 2674 (and the implications of § 2680) imposing liability "in the same manner and to the same extent as a private individual under like circumstances . . ." must be read as excluding liability in the performance of activities which private persons do not perform. Thus, there would be no liability for negligent performance of "uniquely governmental functions." The Government reads the statute as if it imposed liability to the same extent as would be imposed on a private individual "under the same circumstances." But the statutory language is "under like circumstances," and it is hornbook tort law that one who undertakes to warn the public of danger and thereby

induces reliance must perform his "good Samaritan" task in a careful manner.

Furthermore, the Government in effect reads the statute as imposing liability in the same manner as if it were a municipal corporation and not as if it were a private person, and it would thus push the courts into the "non-governmental"-"governmental" quagmire that has long plagued the law of municipal corporations. A comparative study of the cases in the forty-eight States will disclose an irreconcilable conflict. More than that, the decisions in each of the States are disharmonious and disclose the inevitable chaos when courts try to apply a rule of law that is inherently unsound. The fact of the matter is that the theory whereby municipalities are made amenable to liability is an endeavor, however awkward and contradictory, to escape from the basic historical doctrine of sovereign immunity. The Federal Tort Claims Act cuts the ground from under that doctrine; it is not self-defeating by covertly embedding the casuistries of municipal liability for torts.[1]

---

[1] A good illustration of the effort of a conscientious court to reconcile the irreconcilable is *Haley* v. *City of Boston,* 191 Mass. 291, 77 N. E. 888. For an example of the confusion prevailing in one jurisdiction, compare *District of Columbia* v. *Woodbury,* 136 U. S. 450 (municipal corporation liable for injuries caused by negligent failure to keep sidewalk in repair) with *Harris* v. *District of Columbia,* 256 U. S. 650 (municipal corporation not liable for injuries caused by negligent sprinkling of streets). But even in the law of municipal corporation and state liability, one State at least has sought to emerge from the quagmire. See the more recent New York cases: *Foley* v. *State of New York,* 294 N. Y. 275, 62 N. E. 2d 69 (State liable when negligent failure to replaced burned-out bulb in traffic light caused accident); *Bernardine* v. *City of New York,* 294 N. Y. 361, 62 N. E. 2d 604 (city liable in negligence action for damages caused by runaway police horse). When the confused law of municipal corporations is applied to the Tort Claims Act, the same unsatisfactory results occur. Compare the holding of the Court of

While the Government disavows a blanket exemption from liability for all official conduct furthering the "uniquely governmental" activity in any way, it does claim that there can be no recovery based on the negligent performance of the activity itself, the so-called "end-objective" of the particular governmental activity. Let us suppose that the Chief Petty Officer going in a Coast Guard car to inspect the light on Chandeleur Island first negligently ran over a pedestrian; later, while he was inspecting the light, he negligently tripped over a wire and injured someone else; he then forgot to inspect an outside connection and that night the patently defective connection broke and the light failed, causing a ship to go aground and its cargo of triple super phosphate to get wet; finally the Chief Petty Officer on his way out of the lighthouse touched a key to an uninsulated wire to see that it was carrying current, and the spark he produced caused a fire which sank a nearby barge carrying triple super phosphate. Under the Government's theory, some of these acts of negligence would be actionable, and some would not. But is there a rational ground, one that would carry conviction to minds not in the grip of technical obscurities, why there should be any difference in result? The acts were different in time and place but all were done in furtherance of the officer's task of inspecting the lighthouse and in furtherance of the Coast Guard's task in operating a light on Chandeleur Island. Moreover, if the United States were to permit the operation of private lighthouses—not at all inconceivable—the Government's basis of differentiation would be gone and the negligence charged in this case would be actionable. Yet there would be no change in the character of the

---

Appeals for the Fifth Circuit in the instant case, 211 F. 2d 886, with its holding in *United States* v. *Lawter,* 219 F. 2d 559 (United States liable under Tort Claims Act for negligence of Coast Guard during helicopter rescue operation).

Government's activity in the places where it operated a lighthouse, and we would be attributing bizarre motives to Congress were we to hold that it was predicating liability on such a completely fortuitous circumstance—the presence or absence of identical private activity.[2]

While the area of liability is circumscribed by certain provisions of the Federal Tort Claims Act, see 28 U. S. C. § 2680, all Government activity is inescapably "uniquely governmental" in that it is performed by the Government. In a case in which the Federal Crop Insurance Corporation, a wholly Government-owned enterprise, was sought to be held liable on a crop-insurance policy on the theory that a private insurance company would be liable in the same situation, this Court stated: "Government is not partly public or partly private, depending upon the gov-

---

[2] Although the argument is more elaborately presented here, this is not the first statute which the Government has attempted to construe in this manner. The Suits in Admiralty Act, 41 Stat. 525, provided that a libel *in personam* could be brought against the United States for damage caused by a Government-owned merchant vessel or tug in cases "where if such vessel were privately owned or operated . . . a proceeding in admiralty could be maintained . . ." and stated that "such suits shall proceed and shall be heard and determined according to the principles of law and to the rules of practice obtaining in like cases between private parties." In *Eastern Transportation Co.* v. *United States,* 272 U. S. 675, an action was brought under the Act to recover damages for the loss of a ship and cargo by collision with an unmarked wreck of a sunken Government-owned merchant vessel. The Government moved to dismiss the action on the ground, *inter alia,* that "The said alleged cause of action set out in the said libel relates to an alleged failure on the part of the officers and/or agents of the United States to perform a purely governmental function or to alleged negligence of such officers and/or agents in the performance of a purely governmental function; and gives rise to no liability on the part of the United States of America for which they are suable in the United States Court or elsewhere." The motion to dismiss was granted on another ground but on appeal the Supreme Court rejected all arguments that the district court lacked jurisdiction and reversed the judgment of the district court.

ernmental pedigree of the type of a particular activity or the manner in which the Government conducts it." *Federal Crop Insurance Corp.* v. *Merrill,* 332 U. S. 380, 383–384. On the other hand, it is hard to think of any governmental activity on the "operational level," our present concern, which is "uniquely governmental," in the sense that its kind has not at one time or another been, or could not conceivably be, privately performed.

There is nothing in the Tort Claims Act which shows that Congress intended to draw distinctions so finespun and capricious as to be almost incapable of being held in the mind for adequate formulation. The statute was the product of nearly thirty years of congressional consideration and was drawn with numerous substantive limitations and administrative safeguards. (For substantive limitations, see § 2680 (a)–(m).[3] For administrative safeguards, see § 2401 (b) (statute of limitations); § 2402 (denial of trial by jury); § 2672 (administrative adjustment of claims of $1,000 or less); § 2673 (reports to Congress); § 2674 (no liability for punitive damages or for interest prior to judgment); § 2675 (disposition by federal agency as prerequisite to suit when claim is filed); § 2677 (compromise); § 2679 (exclusiveness of remedy).) The language of the statute does not support the Government's argument. Loose general statements in the legislative history to which the Government points seem directed mainly toward the "discretionary function" exemption of § 2680 and are not persuasive. The broad and just purpose which the statute was designed to effect was to compensate the victims of negligence in the conduct of governmental activities in circumstances like unto those in which a private person would be liable and not

---

[3] Congress significantly withheld liability for claims relating, *inter alia,* to the postal service, tax collection, quarantine establishment, fiscal operations, combatant activities of the Coast Guard during time of war, and the activities of the TVA.

to leave just treatment to the caprice and legislative burden of individual private laws. Of course, when dealing with a statute subjecting the Government to liability for potentially great sums of money, this Court must not promote profligacy by careless construction. Neither should it as a self-constituted guardian of the Treasury import immunity back into a statute designed to limit it.

The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.

The Court of Appeals for the Fifth Circuit considered *Feres* v. *United States,* 340 U. S. 135, and *Dalehite* v. *United States,* 346 U. S. 15, controlling. Neither case is applicable. *Feres* held only that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law." 340 U. S., at 146. And see *Brooks* v. *United States,* 337 U. S. 49. The differences between this case and *Dalehite* need not be labored. The governing factors in *Dalehite* sufficiently emerge from the opinion in that case.[4]

---

[4] The Court in *Dalehite* disposed of a claim of liability for negligence in connection with fire fighting by finding that "there is no analogous liability . . ." in the law of torts. 346 U. S., at 44. But see *Workman* v. *New York City,* 179 U. S. 552.

The judgment of the Court of Appeals is reversed and the case is remanded to the District Court for further proceedings.

*Reversed and remanded.*

MR. JUSTICE REED, with whom MR. JUSTICE BURTON, MR. JUSTICE CLARK, and MR. JUSTICE MINTON join, dissenting.

The Court reverses the judgment on the ground that the United States is liable under the Federal Tort Claims Act for damages caused by the negligence of the Coast Guard in maintaining a lighthouse light near the mouth of the Mississippi. The alleged negligence was the failure of the Coast Guard personnel to check the electrical system which operated the light, the failure to make a proper examination of the connections and other apparatus connected with the light, and the failure to repair the light or give notice to vessels that the light was not functioning. Although navigators were warned this was an "unwatched light," [1] it is assumed at this point in the litigation that this negligence occurred and that it was the proximate cause of the loss. Government operation of the lighthouse was authorized by 14 U. S. C. § 81. It is forbidden to others except by authority of the Coast Guard.[2]

---

[1] United States Coast Guard, Light List, *Atlantic and Gulf Coasts of the United States,* corrected to January 1, 1951 (C. G. 158), pp. 5, 498.

[2] 14 U. S. C. § 83:

"No person, or public body, or instrumentality, excluding the armed services, shall establish, erect, or maintain any aid to maritime navigation without first obtaining authority to do so from the Coast Guard in accordance with applicable regulations. Whoever violates the provisions of this section or any of the regulations issued by the Secretary in accordance herewith shall be guilty of a misdemeanor and shall be fined not more than $100 for each offense. Each day during which such violation continues shall be considered as a new offense."

The Government advises that as of June 30, 1953, government aids

The question of the liability of the United States for this negligence depends on the scope and meaning of the Federal Tort Claims Act. The history of the adoption of that Act has heretofore been thoroughly explained.[3] Before its enactment, the immunity of the Government from such tort actions was absolute. The Act authorized suits against the Government under certain conditions. The Government was made liable for injury to persons or property

> "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private

to navigation numbered 38,169; authorized private aids 3,301. U. S. Coast Guard, Aids to Navigation Operated and Maintained by the United States Coast Guard (June 30, 1953) pp. 1, 4.

We are further advised:

"The Coast Guard in its manual on aids to navigation gives these examples of typical aids considered in the category of private aids [U. S. Coast Guard, *Aids to Navigation* (C. G. 127, 1945) p. 1201]:

"(1) Standard buoy and lighting equipment employed by the United States Engineers to mark dredging areas.

"(2) Buoys, ranges and sound signals in channels dredged by private corporations to their property, which channels are used exclusively by the corporation's, or its contractor's, vessels.

"(3) Aids established by the Army and Navy for their own use in connection with the approaches to loading piers, etc.

"See also, U. S. Coast Guard, *Aids to Navigation Manual* (CG–222, Jan. 1953), pp. 4–1, 4–3.

"Coast Guard regulations require all persons owning, occupying, or operating bridges over the navigable waters of the United States to maintain at their own expense such lights required for the safety of marine navigation as may be prescribed by the Commandant. 33 C. F. R. (1949 ed.) § 68.01–1. In addition, there is a non-delegable duty imposed upon the owner of a sunken wreck to mark it. 33 U. S. C. 409; 33 C. F. R. (1949 ed.) 64.01–1."

[3] *Feres* v. *United States,* 340 U. S. 135; *Dalehite* v. *United States,* 346 U. S. 15.

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U. S. C. § 1346 (b).

There was a further condition, 28 U. S. C. § 2674, that the United States should be liable "in the same manner and to the same extent as a private individual under like circumstances." [4]

In *Feres* v. *United States,* 340 U. S. 135, we passed upon the applicability of the Act to claims by members of the armed services injured through the negligence of other military personnel.[5] We said:

"One obvious shortcoming in these claims is that plaintiffs can point to no liability of a 'private individual' even remotely analogous to that which they are asserting against the United States. We know of no American law which ever has permitted a soldier to recover for negligence, against either his superior officers or the Government he is serving. Nor is there any liability 'under like circumstances,' for no private individual has power to conscript or mobilize a private army with such authorities over persons as the Government vests in echelons of command. . . . In the usual civilian doctor and patient relationship, there is of course a liability for malpractice. And a landlord would undoubtedly be held liable if an injury occurred to a tenant as the result of a negligently maintained heating plant. But the liability assumed by the Government here is that created by 'all the circumstances,' not that which a

---

[4] There were further limitations and certain specific exceptions not pertinent here.

[5] *E. g.,* the negligence of an Army surgeon during an operation in sewing up a towel in the abdomen of a soldier; and negligence in quartering a soldier in barracks known to be unsafe because of a defective heating plant.

few of the circumstances might create. We find no parallel liability before, and we think no new one has been created by, this Act. Its effect is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities." *Id.*, at 141–142.

Thus, in *Feres* the Court was of the view that the Act does not create new causes of action theretofore beyond the applicable law of torts. So, in determining whether an action for negligence in maintaining public lights is permissible, we must consider whether similar actions were allowed by the law of the place where the negligence occurred, prior to the Tort Claims Act, against public bodies otherwise subject to suit.

*Dalehite* v. *United States,* 346 U. S. 15, 42, followed the reasoning of *Feres.* That case involved, among other issues, the liability of the United States for negligence of the Coast Guard in fighting fire. The Coast Guard had been found negligent in its fire-fighting duties by the trial court. These duties were outside the discretionary function exception of § 2680 (a) of the Act. Resting our decision on the Act itself, we said the Tort Claims Act

"did not change the normal rule that an alleged failure or carelessness of public firemen does not create private actionable rights. Our analysis of the question is determined by what was said in the *Feres* case. See 28 U. S. C. §§ 1346 and 2674. The Act, as was there stated, limited United States liability to 'the same manner and to the same extent as a private individual under like circumstances.' 28 U. S. C. § 2674. Here, as there, there is no analogous liability; in fact, if anything is doctrinally sanctified in the law of torts it is the immunity of communities and other public bodies for injuries due to fighting fire." *Id.*, at 43–44.

These two interpretive decisions have not caused Congress to amend the Federal Tort Claims Act. As a matter of fact, the catastrophe that gave rise to the *Dalehite* case was subsequently presented to Congress for legislative relief by way of compensation for the losses which resulted, as found by the trial court, partly from the negligence of the Coast Guard. Throughout the reports, discussion and enactment of the relief act, there was no effort to modify the Tort Claims Act so as to change the law, in any respect, as interpreted by this Court in *Feres* and *Dalehite*.[6] Although its discussion was restricted solely to the discretionary function exception to the Act, Congress must have accepted the rulings relating to the issues here involved as in accord with its understanding of the Tort Claims Act. One cannot say that when a statute is interpreted by this Court we must follow that interpretation in subsequent cases unless Congress has amended the statute. On this our cases conflict.[7] However, we should continue to hold, as a matter of *stare decisis* and as the normal rule, that inaction of Congress, after a well-known and important decision of common knowledge, is "an aid in statutory construction . . . useful at times in resolving statutory ambiguities." *Helvering* v. *Reynolds,* 313 U. S. 428, 432. The nonaction of Congress should decide this controversy in the light of the previous rulings. The reasons which led to the conclusions against creating new and novel liabilities in the *Feres* and *Dalehite* cases retain their persuasiveness.

---

[6] 69 Stat. 707; H. R. Rep. No. 2024, 83d Cong., 2d Sess.; S. Rep. No. 2363, 83d Cong., 2d Sess.; H. R. Rep. No. 1305, 84th Cong., 1st Sess.; H. R. Rep. No. 1623, 84th Cong., 1st Sess.; S. Rep. No. 684, 84th Cong., 1st Sess.

[7] Compare *United States* v. *Elgin, J. & E. R. Co.,* 298 U. S. 492, 500; *United States* v. *South Buffalo R. Co.,* 333 U. S. 771, 775; *Toolson* v. *New York Yankees,* 346 U. S. 356, with *Helvering* v. *Hallock,* 309 U. S. 106; *Commissioner* v. *Church,* 335 U. S. 632.

This enactment, like any other, should be construed so as to accomplish its purpose, but not with extravagant generosity so as to make the Government liable in instances where no liability was intended by Congress. It is certainly not necessary that every word in a statute receive the broadest possible interpretation. If Congress intended to create liability for all incidents not theretofore actionable against suable public agencies, that intention should be made plain. The courts are not the legislative branch of the Government.

The Act made the Government liable in instances where it would be suable "if a private person." The meaning of "private person" is not discussed in the legislative history. In *Feres* we talked of private liability and came to a conclusion which is contrary to that reached by the Court today. See pp. 72–73, *supra.* We held that because surgeons in private practice or private landlords were liable for negligence did not mean the United States was. Liability of governments for the failure of lighthouse warning lights is as unknown to tort law as, for example, liability for negligence in fire fighting excluded by the *Dalehite* ruling. Lighthouse keeping is as uniquely a governmental function as fire fighting. There is at least some uncertainty and ambiguity as to what Congress meant by making the United States liable in circumstances where it would be liable "if a private person." That uncertainty should not lead us to accept liability for the United States in this case. In dealing with this enlarged concept of federal liability for torts, wisdom should dictate a cautious approach along the lines of *Feres* and *Dalehite.*

The Act says that the United States shall be liable in accordance with the law of the place where the act or omission occurred. § 1346 (b). This alleged tort occurred in Louisiana. Under the Louisiana law a municipal corporation is not responsible for injury sustained as

a result of negligence on the part of the employees of a city in the maintenance of traffic lights.[8]  Street traffic lights are a close analogy to navigation lights.  We can see no reason to doubt that under Louisiana law the maintenance of navigation lights, if permissible, by municipalities would likewise be free of liability.  The Court warns us against the morass of decisions that involve municipal tort liability.  It calls that law a "quagmire" and avoids it by a complete surrender of sovereign immunity without regard to the law of municipal liability of the respective States.

The over-all impression from the majority opinion is that it makes the Government liable under the Act for negligence in the conduct of "any governmental activity on the 'operational level.' "  It seems broad enough to cover all so-called "uniquely governmental activities." Logically it may cover negligence in fire fighting, although the *Dalehite* holding on that point is not overruled.[9] Perhaps liability arises even for injuries from negligence in pursuing criminals.

The Court's literal interpretation of this Act brings about an application of the Federal Tort Claims Act analogous to that condemned by Congress in the Portal-to-Portal Act of 1947 after *Anderson* v. *Mt. Clemens Pottery Co.,* 328 U. S. 680, see 61 Stat. 84, § 1 (a), and in the Fair Labor Standards Amendments of 1949, 63 Stat. 910, after *Bay Ridge Co.* v. *Aaron,* 334 U. S. 446, see 2 U. S. Code Cong. Serv. (1949) 1617.  Compare *United States* v. *American Trucking Assns.,* 310 U. S. 534.  The judgment should be affirmed.

---

[8] *Edwards* v. *City of Shreveport,* 66 So. 2d 373; cf. *Howard* v. *City of New Orleans,* 159 La. 443, 105 So. 443.

[9] But see footnote 4 of the majority opinion, in which *Workman* v. *New York City* is cited.