Fannie ISRAEL and Mortimer H.
Israel, Plaintiffs,

v.

UNITED STATES of America,
Defendant.

United States District Court
S. D. New York.

Feb. 20, 1956.

Barry, Treanor, Shandell & Brophy, New York City, for plaintiffs.

. Paul W. Williams, U. S. Atty., for the S. D. of New York, New York City, for defendant. Amos J. Peaslee, Jr., Asst. U. S. Atty., New York City, of counsel.

CASHIN, District Judge.

This is an action against the United States Government pursuant to Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., by the plaintiff, Fannie Israel, for damages for personal injuries and by the plaintiff husband, Mortimer H. Israel, for loss of services, etc.

### Findings of Fact

1. On September 7, 1950 the plaintiff, Fannie Israel, was a passenger in a light two-seater airplane, piloted by her son-in-law Smollins, enroute from the Mahopac Airport, New York, to Youngstown, Ohio. While enroute the plane ran short of fuel and the pilot made an emergency landing at the Brookville Airport, Brookville, Pennsylvania.

2. The Brookville Airport was maintained and operated by the Civil Aeronautics Authority as an intermediate or emergency airfield. The field was grass surfaced and adapted for the use of light planes.

3. Smollins, the pilot, landed the plane without mishap and bought gas from a government employee in charge of the field.

4. Thereafter the pilot commenced to take the plane off on the east to west runway, which was some 2,200 feet long and ample distance for a plane of this type to become airborne.

5. The pilot, Smollins, had only about twenty-five hours flying time in this particular type of plane and was not over-familiar with its controls. During the early part of the takeoff run the pilot, either consciously or unconsciously, ap-

plied the brakes from time to time. Also, the condition of the field was unusually rough, even for a field of this type, so as to cause plane to bounce and lose flying speed. The result was the plane did not gain full flying speed in time to safely attempt a takeoff which would clear the natural obstacles surrounding the airfield. The grass was wet and by the time the pilot decided to abandon his takeoff the plane could not be stopped before it went off the runway and over an embankment, causing injury to the plaintiff.

6. The plaintiff, Fannie Israel, was seriously injured and endured much pain and suffering. She suffered a fractured acetabulum with outward displacement of the bone, concussion of the brain, laceration of the scalp, and injury in the sternum or chest region to the left of the midline. She spent six weeks in the hospital and her husband, the plaintiff, Mortimer H. Israel, expended $1,121 for doctor and medical bills. It has been stipulated, however, that her damages are limited to the period of time from September 7, 1950 to December 21, 1950, when she was injured in another accident.

### Conclusions of Law

■ I. Plaintiff, Fannie Israel, is entitled to judgment in the amount of $3,000.

■ II. Plaintiff, Mortimer H. Israel, is entitled to judgment in the amount of $2,000.

■■ There can be no question on the facts of this case that the pilot of the plane was negligent and that his negligence contributed to the accident. Also, on the law, there can be no question that this negligence of the pilot cannot be imputed to the passenger plaintiff. The only issue is—Was defendant negligent? Did that negligence contribute to the cause of the accident?

The evidence produced at the trial showed that at least two experts (Wilson, CAA Safety Agent, and Mato, Pennsylvania State Police Investigator) in their reports made contemporaneously with the date of the accident, over five years ago, took occasion to refer to the "roughness" of the airfield. The Government expert, Wilson, even designated it as a contributing cause of the accident, and said:—"The field is also rough and would tend to cause the aircraft to bounce on takeoff run and lose lift". It seems conceded by all the witnesses and experts in this case that the failure of the airplane to gain sufficient flying speed soon enough, caused the accident. No one contended that the pilot was negligent in abandoning his takeoff when he did.

Both Wilson and Mato testified for the defendant at the trial and, in the opinion of the Court, their testimony taken together did not substantially contradict the inference to be drawn from the report quoted above, that this field was unusually rough for a field of this type.

The defendant takes the position that Wilson's report cannot be used as affirmative evidence. In view of what we have concluded with respect to Wilson's testimony, his contention is probably immaterial. It is also without substance. Pekelis v. Transcontinental & Western Air., 2 Cir., 187 F.2d 122.

■ It is our opinion, based on the conclusion of defendant's own expert, that this airfield was hazardous and that defendant maintained and operated it in that condition. The evidence also shows that the defendant did not give any notice of the condition of this field.

■ The defendant contends, however, that something more than ordinary negligence must be shown in order to hold it liable in a case of this kind. It suffices to say that the defendant, having undertaken to set up an intermediate or emergency airfield with a grass surface for light planes, was under a duty to maintain and operate it in a safe condition. Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122; Eastern Air Lines v. Union Trust Company,

95 U.S.App.D.C. 189, 221 F.2d 62, affirmed 350 U.S. 907, 76 S.Ct. 192. Further defined, the defendant's duty here was to maintain the surface of this airfield on a par with airfields of this type.