**Margaret E. DOODY, Administratrix, of the Estate of Edward F. Doody, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. Nos. 9–92, 9–112, 9–117, 9–121.**

United States District Court
D. Maine, S. D.

Feb. 11, 1969.

Morris D. Katz, Boston, Mass., Norman S. Reef, Portland, Me., William F.

Looney, Jr. and A. David Mazzone, Boston, Mass., Donald A. Leadbetter, Portland, Me., John Evans Harrington, Bangor, Me., Robert P. Malone and Myron Boluch, Boston, Mass., for plaintiffs.

Lloyd P. LaFountain, U. S. Atty., Edward G. Hudon, Asst. U. S. Atty., Portland, Me., Thomas F. McGovern, Admiralty & Shipping Section, Dept. of Justice, Washington, D. C., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DIRECTION FOR ENTRY OF JUDGMENT

GIGNOUX, District Judge.

On July 23, 1965, the F/V SNOOPY, while dragging for scallops off the coast of North Carolina, caught a torpedo in her port drag, exploded and sank. As a result of the explosion and sinking, eight members of her crew, including the captain, died, and the four surviving crew members sustained personal injuries. Having failed in prior litigation to establish that the sinking resulted from any fault of the SNOOPY or its owner, see Petition of Trawler Snoopy, Inc., 268 F.Supp. 951 (D.Me.1967), the personal representatives of the deceased crew members and the surviving crew members bring the present actions against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* (1964) to recover damages for the deaths and personal injuries resulting from the sinking. With the agreement of the parties, the actions have been consolidated for all purposes, including trial, Fed.R.Civ.P. 42(a), and a separate trial has been had on the issues of liability. Fed.R.Civ.P. 42(b). The Court has heard the evidence and considered the written and oral arguments of counsel on the issues of liability, and now makes its findings of fact and conclusions of law and directs entry of its judgment as follows:

At all times material hereto, Trawler Snoopy, Inc., a Maine corporation, was the owner and operator of the F/V SNOOPY, a wooden dragger, whose home port was Portland, Maine. The captain of the SNOOPY was Edward F.

Doody, of Scarborough, Maine, a fishing vessel captain of many years experience.

Some time during May 1965 the SNOOPY left Portland for Cape May, New Jersey and the scallop fishing grounds off the coast of North Carolina. On July 19, 1965, the SNOOPY departed Cape May on her fourth trip to the scallop beds located approximately 45 miles east of Currituck Beach, North Carolina. On July 23, 1965, at approximately 9:15 p. m., at latitude 36°20′ north, longitude 74°55′ west, while the SNOOPY was in the company of about 40 other scallopers, she commenced to pull in her catch. The starboard drag had already been hauled back and was on the starboard rail, but when an attempt was made to bring the port drag aboard, it was found that a torpedo was hanging vertically by its propellor or propellor guard on either the sweep chain or a tickler on the exterior of the chain bag. The device was an expended German G7e torpedo which had been lying on the ocean bottom since World War II. It weighed 3,540 pounds and was 23 feet long and 21 inches in diameter. Its weight was such as to cause the cable to slip on the winch drum.

Captain Doody was on watch in the wheelhouse, and under his direction, an initial effort was made to lift the drag high enough to bring it aboard. The crew was unable to accomplish this because the winch could not lift the torpedo high enough to clear the rail. An attempt was then made to dislodge the tor-

pedo by securing a line from the torpedo to a gallows stay overhead and then dropping the drag out from under it, but this effort also proved to be unsuccessful. After the failure of these attempts, Captain Doody again directed the crew to try to bring the torpedo aboard. As this was being done, the torpedo swung away from the vessel as the SNOOPY rolled in a swell, swung back, struck the rail, and exploded. The efforts to free the torpedo lasted about 15 minutes.

■■ In order to recover in these actions, plaintiffs must prove that the sinking of the SNOOPY was caused by some negligent or otherwise wrongful act or omission for which the United States Government is legally responsible. 28 U.S.C. §§ 1346(b), 2674 (1964); Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Upon the entire record in this case, the Court is compelled to conclude that plaintiffs have failed to sustain their burden in this respect.

In their effort to establish Governmental liability for this unfortunate accident, plaintiffs' sole contention is that the sinking of the SNOOPY was caused by the negligence of the Government in providing fishermen with erroneous instructions as to the method of handling explosive objects caught in their nets and in offering a monetary reward for their return.[1] In support of their position, plaintiffs point to: (1) a "Warning to Fishermen," set out in the margin,[2]

1. Plaintiffs abandoned at trial an alternative contention originally advanced by them, that the Government was also negligent in failing to take appropriate steps to protect mariners from the risk that unexploded torpedoes would be dislodged from the ocean bottom by a series of seismic explosions set off by the Government as part of a seismographic experiment conducted by the Government in June and July 1965.

2. UNITED STATES—Warning to fishermen.—A vessel having an unidentified heavy object in its net should move to shoaler water before recovering the net, in case the object proves to be a depth charge.

Aerial bombs, recognizable by fins on one end and a small propeller on either end should not be jettisoned, as this may result in detonation. It is recommended that any object, identified as an aerial bomb be brought aboard horizontally with minimum handling, laid flat on the deck, and carefully secured. The nearest naval or Coast Guard activity should be notified for directions as to disposition.

Depth charges, identified by absence of any exterior mechanism, should be brought aboard and the same procedure followed.

Floating objects believed to be mines should not be touched. Accurate position should be reported immediately to the nearest naval or Coast Guard activity.

which was contained in the printed Atlantic Notice to Mariners, prepared jointly by the U. S. Coast Guard and the U. S. Naval Oceanographic Office and published in January 1965; and (2) a "Reward Notice," also set out in the margin,[3] which was issued by the U. S. Naval Underwater Ordnance Station, Newport, Rhode Island, and was reprinted in the mimeographed Local Notice to Mariners issued on July 29, 1964 by the Commander, First Coast Guard District, Boston, Massachusetts. Plaintiffs attribute negligence to the Government in recommending to fishermen, in the Warning, that explosive objects recovered in their nets be brought aboard their vessels, a highly dangerous and unsafe procedure, and in encouraging fishermen, in the Reward Notice, to attempt to salvage such explosive devices by the offer of a reward for their recovery.[4]

The present record, however, is devoid of any persuasive evidence that Captain Doody had ever seen either the Warning or the Reward Notice.[5] More importantly, plaintiffs have presented no credible evidence that even if Captain Doody had been aware of these notices, they in any way influenced his judgment or actions in attempting to deal with the problem with which he was confronted when he discovered the torpedo in his net. To the contrary, the only reasonable conclusion from the present record is that Captain Doody, faced with a wholly unprecedented emergency,[6] apprehensive of the danger to his vessel and his crew,[7]

3. U. S. Naval Underwater Ordnance Station Newport, Rhode Island

   The Department of the Navy of the United States of America hereby offers a reward of; fifty dollars ($50.00) for the recovery of a lost mine; one hundred dollars ($100.00) for the recovery of lost torpedos or self-propelled mines; or, twenty-five dollars ($25.00) for the recovery of major components thereto, which are the property of the U. S. Navy, or any information leading to the recovery thereof. Lost mines, torpedos, self-propelled mines, or major components shall be returned or any information communicated to the U. S. Naval Underwater Ordnance Station, Newport, Rhode Island. This offer will expire on 30 June 1965.

   > F. B. TUCKER
   > Captain, U. S. Navy
   > Commanding Officer
   > U. S. Naval Underwater
   >   Ordnance Station
   > Newport, Rhode Island

4. Plaintiffs do not suggest that the Government was under any duty to issue instructions to mariners concerning the proper method of handling explosive objects, but argue that having undertaken to do so, the Government was required to use due care in discharging an obligation which it had voluntarily assumed. *See* Indian Towing Co. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); United States v. Sandra & Dennis Fishing Corp., 372 F.2d 189 (1st Cir.), cert. denied, 389 U.S. 836, 88 S.Ct. 48, 19 L.Ed.2d 98 (1967). It should be noted, however, that while the Warning to Fishermen contains instructions with respect to the handling of aerial bombs, depth charges and floating objects believed to be mines, it contains no instructions as to the proper method of handling torpedoes. It should also be observed that the Reward Notice offers a reward only for the recovery of lost torpedoes or mines "belonging to the U. S. Navy" and that it was to expire, by its terms, several weeks prior to the tragedy.

5. Neither the printed Atlantic Notices to Mariners nor the mimeographed Local Notices to Mariners were received by Captain Doody at his home. The owner of the Harris Company, a Portland ship chandler frequently visited by Captain Doody, testified that his firm received and kept on hand copies of the printed Atlantic Notices, but not the mimeographed Local Notices. Mr. Harris could not remember having seen Captain Doody with a copy of a printed notice. Distribution of the Reward Notice issued by the Newport Underwater Ordnance Station was limited to postmasters and others in areas bordering on Narragansett Bay. Distribution of the mimeographed Local Notices issued by the First Coast Guard District at Boston was restricted to the New England area and did not include the Middle Atlantic States adjacent to the waters in which the SNOOPY was operating when she was sunk.

6. The only reported torpedo finding prior to the SNOOPY incident occurred off the coast of Norway shortly before the SNOOPY finding. There is no evidence that either Captain Doody or the United States Government was aware of this.

7. That Captain Doody was aware of the danger is confirmed by Captain Lepire,

but also reluctant to jettison a drag which was worth approximately $2,000,[8] exercised his best judgment in extraordinarily trying circumstances in an effort to free the torpedo without loss of the net. The only evidence offered by plaintiffs that Captain Doody was in any way motivated by a possible reward was the testimony of French and Martin, the only surviving crew members to testify at the trial, and of Captain Manley, Captain Doody's brother-in-law. French and Martin testified that Captain Doody had participated in several "casual conversations" in the SNOOPY's galley, during which rewards for the recovery of explosive objects were discussed. Captain Manley stated that he and Captain Doody had had similar discussions in Captain Doody's home on a number of occasions prior to the sinking. The Court is singularly unimpressed by this testimony. Apart from the obvious interest of the two crew members, as plaintiffs, in the outcome of these actions, and Captain Manley's understandably sympathetic attitude, it is highly significant that there was no suggestion that Captain Doody might have been motivated by a possible reward, either when the four surviving crew members were interviewed by naval investigators immediately following the accident, or when they testified two years later in the prior litigation involving their claims against the vessel and its owner. See Petition of Trawler Snoopy, Inc., *supra*. In fact, so far as the present record discloses, the first mention of the Reward Notice was in a September 1967 interview with plaintiffs' counsel during the course of his preparation for the trial of the present actions.

Plaintiffs have failed to show any action by Captain Doody in reliance either upon the "Warning to Fishermen" contained in the Atlantic Notice to Mariners or upon the "Reward Notice" issued by the Naval Underwater Ordnance Station at Newport, Rhode Island. Accordingly, the Court holds that plaintiffs have failed to sustain their burden of proving that the sinking of the SNOOPY resulted from any fault of the United States Government. Judgment will be entered for the defendant against the plaintiffs dismissing the actions, with prejudice and without costs.

It is so ordered.

who was fishing on his own vessel close by the SNOOPY. Captain Lepire testified that he overheard on his radio telephone what he recognized as Captain Doody's voice saying, "quite hysterical and high-pitched, that he had caught something in his dredge and that he was warning somebody in his vicinity—I don't know who it was—to stay away from him. * * *"

8. The mate, Leavitt, who was the only member of the crew in the wheelhouse with Captain Doody, but who did not testify at the present trial, informed the naval investigators in August 1965 that there had been no thought of "dropping the bag" because "the bag was valued at roughly $2,000."