**INGRAM BARGE COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 76–1013A(4).

United States District Court,
E. D. Missouri, E. D.

June 22, 1977.

As Amended July 18, 1977.

Lucas & Murphy, St. Louis, Mo., for plaintiff.

Wesley D. Wedemeyer, Asst. U.S. Atty., U.S. Dept. of Justice, St. Louis, Mo., Robert E. O'Neill, Trial Atty., Admiralty & Shipping Section, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff Ingram Barge Company brought this suit to recover damages sustained when the M/V Bill Gee with barges T/B Texas, T/B Port Arthur, I/B 2701 L and I/B 1501 B in tow grounded in the Upper Mississippi River. Plaintiff alleges that the grounding was the result of negligence on the part of defendant.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties, and being otherwise fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1) Plaintiff Ingram Barge Company is a corporation and at all times relevant herein was the owner and operator of Barges T/B Texas and T/B Port Arthur. Barges I/B 2701 L and I/B 1501 B were at all times relevant herein owned by a subsidiary of plaintiff. At all times relevant herein, plaintiff was the operator and owner pro hac vice of the M/V Bill Gee.

2) Defendant United States of America maintains as a navigable waterway that portion of the Upper Mississippi River between Mile 431 and 431.5 near New Boston, Illinois.

3) At approximately 4:00 a. m. on November 2, 1975, plaintiff's M/V Bill Gee, with a tow of four loaded petroleum barges, was proceeding upstream at or near Mile 431 to Mile 431.5 of the Upper Mississippi River. The Barge Texas was the lead barge, followed by the Barge Port Arthur,

Barge I/B 1501 B and Barge I/B 2701 L. Barge Texas had a bow draft of 6 feet and a stern draft of 8 feet, 6 inches. The other three barges had bow and aft drafts of 8 feet, 6 inches. The M/V Bill Gee had a bow and aft draft of 8 feet.

4) The United States of America placed and maintained channel buoys at Mile 431 to Mile 431.5 of the Upper Mississippi River. The buoys are black on the right descending side of the channel and red on the left descending side. These buoys are commonly relied upon by mariners as denominating the navigable channel, or that portion of the river containing at least 9 feet of water.

5) As the captain was attempting to navigate the tow on November 3, 1975 through the river bend at Mile 431 to Mile 431.5 of the Upper Mississippi River, his tow was at least 35 to 40 feet inside the red buoy line. The Barge I/B 2701 L was grounded. This grounding caused the entire tow to stop and Barges Texas and Port Arthur swung outside the red buoy line, becoming firmly grounded.

6) Soundings of this area were taken on August 18, 1975 by the Army Corps of Engineers and the red buoys were found to be properly positioned. The red buoys were again sounded on September 29, 1975 and were found to be properly positioned. Soundings were taken on October 2, 1975 and the red buoys were found to be properly positioned. No reports were received of shoaling conditions in the area, and no reports were received that any of the red buoys were not properly positioned.

7) The river conditions from mid-October to mid-November are generally stable.

## CONCLUSIONS OF LAW

This Court has jurisdiction over the parties and the subject matter of this action in accordance with 46 U.S.C. §§ 741–752.

■ Defendant's obligation herein, once it undertook to maintain buoys in the area, was the duty of due care: it was obligated to maintain the buoys, to use due care to discover any misplaced buoys and to re-position the same or give warning. *Indian*

*Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955); *Afran Transport Company v. United States,* 309 F.Supp. 650 (S.D.N.Y.1969), *aff'd,* 435 F.2d 213 (2d Cir. 1970), *cert. denied,* 404 U.S. 872, 92 S.Ct. 72, 30 L.Ed.2d 116 (1971); *De Bardeleben Marine Corporation v. United States,* 451 F.2d 140 (5th Cir. 1971); *Russell, Poling & Company v. United States,* 151 F.Supp. 11 (S.D.N.Y.1957), *aff'd,* 252 F.2d 167 (2d Cir. 1958).

■ The evidence herein fails to establish any breach of this duty of due care on the part of defendant. Defendant had checked the buoys approximately once per month for the three months preceding the grounding and found the buoys to be on station. The Court concludes that this is sufficient to satisfy its duty to maintain the buoys. *Cf., Canadian Pacific (Bermuda) Limited v. United States,* 534 F.2d 1165 (5th Cir. 1976) (holding that there is no duty to conduct sounding surveys for shoaling at any particular time).

Assuming arguendo that the red buoys were misplaced, plaintiff has failed to adduce that defendant knew or should have known that the buoys were off-station:

" . . . the record contains insufficient evidence upon which a reasonable inference can be drawn as to the time the buoy was off position prior to the accident. Hence, there is no basis for charging the government with constructive notice. . . . [plaintiff] has failed to prove that the buoys were out of position sufficiently long prior to the accident that the employees of the United States should have known of their displacement. Admittedly, proof of this fact is difficult. Nevertheless, it forms a necessary element of plaintiff's negligence claim so that failure of proof here precludes recovery against the United States. *Russell, Poling & Company, supra* at 16.

Accordingly, judgment will be entered for defendant.