**GARY SHEET & TIN EMPLOYEES FEDERAL CREDIT UNION, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. H 82–606.**

United States District Court, N.D. Indiana, Hammond Division.

March 19, 1985.

As Amended April 16, 1985.

Byron Chudom, Schererville, Ind., for plaintiff.

Colette Winston, U.S. Dept. of Justice, Torts Branch—Civ. Div., Washington, D.C., for defendant.

## ORDER GRANTING MOTION TO DISMISS

KANNE, District Judge.

Defendant, United States of America, filed a Motion to Dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(1) and 12(b)(6) on December 29, 1982. The court, being duly advised, hereby grants defendant's motion for the reasons set forth below.

On August 13, 1982, plaintiff filed a complaint pursuant to 28 U.S.C. § 2671 *et seq.*, also known as the Federal Torts Claims Act, (hereinafter FTCA), alleging that defendant, USA, acting through its agent, the National Credit Union Board (NCUB), negligently allowed plaintiff to engage in prohibited investment activity. As a result of defendant's negligence, plaintiff incurred losses totaling well over $3,000,000.

The facts, as set forth in the complaint, and in the motion to dismiss and responses thereto, indicate that plaintiff is a federal credit union, chartered pursuant to 12 U.S.C. § 1751 *et seq.* During an undisclosed period of time, prior to instituting this suit on August 13, 1982, plaintiff engaged in certain investment activities. These activities primarily involved "trading in forward commitments and contracts relating to the future purchase of pools of insured home mortgages, on the margin" (*Plaintiff's Second Memorandum in Opposition to Defendant's Motion to Dismiss*, p. 1). As a result of this investment activity, plaintiff sustained losses of $3,118,581.49.

Plaintiff contends that because it is subject to regulation by the National Credit Union Administration (NCUA) and its Board (NCUB), the NCUA was obligated to "*supervise and investigate* the investment activities and business transactions of the treasurer-manager of the plaintiff credit union ..." (*Plaintiff's Complaint* ¶ 19).

■ According to plaintiff, part of the NCUAs regulatory duties, assumed or implied, include the duty to notify its member credit unions when their investments are unlawful or hazardous. In this case, fail-ure to warn the plaintiff that its investments were unsafe, in effect, condoned plaintiff's activities. As a result of NCUA's failure to notify plaintiff that its investments were unsafe, plaintiff was lulled into a false sense of security and sustained more losses than it would have, had it been adequately warned. In short, plaintiff contends the defendant, USA, is responsible for plaintiff's poor investment choices.

In its motion to dismiss, defendant asserts various defenses. Initially, defendant agrees with the principle that the United States is immune from liability for reasons of sovereign immunity except where the immunity is waived and the United States consents to suit. *United States v. Sherwood*, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The defendant concedes that the FTCA constitutes one such waiver of sovereign immunity. The FTCA authorizes suits against the United States arising out of tort actions. 28 U.S.C. § 2674 states, in its relevant part:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

28 U.S.C. § 2674.

However, as defendant correctly points out, the waiver of immunity, embodied in the FTCA, is not without some limitations. First, in order to sustain a claim under the FTCA, the plaintiff must be able to show that the United States owed it an actionable duty of care. Secondly, having made a *prima facie* showing that all the requisite elements of a tort claim are present, the plaintiff must show that the action taken by the United States, which constitutes the breach of duty is not an action which is exempt from liability.

■ Certain acts, undertaken by the United States, even though undertaken negligently, cannot result in tort liability. These are acts which are exempt from the

waiver of sovereign immunity embodied in the FTCA. Defendant argues that the act about which plaintiff complains, the failure to regulate plaintiff's investment activities, is an act which falls outside the FTCA's waiver of immunity.

First, defendant maintains it owed plaintiff no duty to guide its investment choices. Secondly, defendant alleges that the act of regulating plaintiff credit union, whether negligently done or not, is an act which falls within either the "discretionary function exception" to tort liability under 28 U.S.C. § 2680(a); the "misrepresentation exception" under 28 U.S.C. § 2680(h); and the "fiscal-monetary exception" under 28 U.S.C. § 2680(i), and thus is not subject to liability, in any event. Under either theory, defendant seeks a dismissal for failure to state a claim.

In the alternative, defendant seeks dismissal of the complaint for lack of subject matter jurisdiction. Defendant contends that plaintiff failed to file its claim in a timely fashion pursuant to 28 U.S.C. § 2401(b) and is therefore barred from bringing a suit in this court.

The court now finds that plaintiff's complaint should be dismissed for failure to state a claim under the FTCA. Plaintiff has failed to allege that an actionable duty to control plaintiff's investments exists. Further, the duty to regulate plaintiff by auditing it is exempt from tort liability under the discretionary function exception. The court need not discuss the other defenses presented by defendant.

The United States argues that its duty to regulate federal credit unions does not create, by implication, a duty to monitor member unions' investment activities. Moreover, defendant argues that any regulatory activity undertaken by it, as to the credit union, is immune from liability pursuant to the "discretionary function exception" found at 28 U.S.C. § 2680(a).

In its pertinent part, § 2680(a) states: The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whjether or not the discretion involved be abused.

Congress specifically intended federal regulatory agencies to be immune from liability resulting from their regulatory activities. "Whatever else the discretionary function may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals." *United States v. Varig,* — U.S. ——, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

The *Varig* case, the Supreme Court's latest discussion of the "discretionary function exception" to FTCA liability, involved a plaintiff who sued the United States which, acting through its agent the FAA, was allegedly negligent in inspecting and certifying an airplane which caught fire. The FAA had certified the plane as meeting the minimal federal safety requirements. The FAA's certification was contingent on a series of "spot-checks" which, if met, would allow the plane to be certified as being in conformance with the minimum federal safety standards.

Plaintiff alleged that the FAA method of certification, based on spot-checks, was improper and the certifications, resulting from this method of inspection, were negligently granted. The Government argued that the responsibility of complying with FAA safety standards lay primarily with the plane's manufacturer and the role of the government was merely to "police the conduct of private individuals by monitoring their compliance with FAA regulations." — U.S. ——, 104 S.Ct. at 2766 (1984). The mechanism for implementing

this monitoring activity was the "spot-check".

The FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the 'nature and quality' protected by § 2680(a). When an agency determines *the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind.* Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding. Here, the FAA has determined that a program of 'spot-checking' manufacturers' compliance with minimum safety standards best accommodates the goal of air transportation safety and the reality of finite agency resources. Judicial intervention in such decisionmaking through private tort suits would require the courts to 'second-guess' the political, social, and economic judgments of an agency exercising its regulatory function. It was precisely this sort of judicial intervention in policymaking that the discretionary function exception was designed to prevent (emphasis added).

— U.S. ——, 104 S.Ct. at 2768 (1984).

The defendant argues that the *Varig* decision effectively precludes the claims brought by plaintiff in this case. Defendant asserts that the thrust of plaintiff's claim is that "the United States should be held liable under the Federal Tort Claims Act for failure to properly supervise and examine the plaintiff Credit Union and to enforce agency regulations." (Defendant's Second Memorandum in Support of Motion to Dismiss, p. 4). The government argues that the decision to regulate a credit union by auditing it is purely discretionary. The decision not to get involved in a credit union's day-to-day activities is also discretionary. Failure to instruct credit unions

on their investment activities is not actionable.

Plaintiff maintains that defendant mischaracterizes the thrust of plaintiff's complaint. According to plaintiff, the gravamen of its complaint is not that regulatory procedures undertaken by the NCUA were inadequate, rather the issue is whether those procedures were applied in a negligent fashion.

Plaintiff argues that the issue in *Varig* concerns a federal agency's decision as how to best implement its regulatory function. That is, the FAA's determination that a spot-check was the *best method of regulating* whether or not a manufacturer was complying with FAA standards was a discretionary decision, not subject to tort liability. In the case at bar, plaintiff does not challenge the activities the NCUA has determined it will undertake in regulating member credit unions. Rather the plaintiff challenges *the way* in which the activity, *once selected,* was undertaken.

It is plaintiff's contention that once the government chose to regulate federal credit unions by auditing them, it had to undertake those audits with due care. According to plaintiff, due care in auditing, implies a duty to *warn* the credit union when the credit union has failed to comply with the statutory regulations. Just as in *Varig,* where the FAA had the duty to deny certification to airplanes which failed the spot-checks and to alert the manufacturers as to that fact, because the spot-checks were undertaken to insure that airplane manufacturers were meeting minimum safety standards; the plaintiff argues the NCUA had the duty to disclose hazardous investment choices to the credit union because it undertook auditing procedures to insure that the credit union's activities met certain requirements.

In support of the "assumed duty" argument, plaintiff refers to *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955) in which the Supreme Court stated:

In that case the Coast Guard negligently operated a lighthouse causing a barge and tug to be damaged. The Court stated (at p. 69, 76 S.Ct. at p. 126):

'The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light on Chandeleur Island and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.'

A less fact-specific distillation of *Indian Towing*'s holding was set out by the Second Circuit Court of Appeals in *Ingham v. Eastern Airlines, Inc.*, 373 F.2d 227, 236 (2nd Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967):

It is now well established that when the government undertakes to perform services which in the *absence of specific legislation* would not be required, it will, nevertheless, be liable if these activities are performed negligently. Thus, for example, though the government *may be under no obligation in the absence of statute* to render medical care to discharged veterans, when it decides to provide such services and does so negligently, it has been held liable under the Tort Claims Act (emphasis added).

Plaintiff's argument, based on the discussion of assumption of duty in *Indian Towing*, was presented, considered and dismissed in a case factually similar to this case by a district court in New York.

In *In Re Franklin National Bank Securities Litigation*, 445 F.Supp. 723 (E.D.N.Y.1978), third-party plaintiffs attempted to sue the government, and its agent, the Federal Deposit Insurance Corporation (FDIC), for negligently undertaking regulation of the Franklin National Bank. The third-party plaintiffs conceded that the government was under no duty to regulate the banking industry and the bank in question. However, third-party plaintiffs argued that once the FDIC assumed the duty to regulate the bank, as it had in that case, it had to utilize due care.

The district court found that plaintiff's argument essentially consisted of two issues. First, the court determined that the United States was not subject to an implied statutory duty to *regulate* a bank's activities solely because it had a *statutory duty to conduct bank examinations*. Secondly, the court ruled that even if the facts indicated that the FDIC had become involved in the day-to-day operations of the bank as a result of its examination, the *purpose* of the FDIC's involvement was not to minimize the bank's losses. Therefore, the FDIC had assumed no duty to do so.

In the case before this court, plaintiffs make the arguments made by third-party plaintiffs in the *Franklin National Bank* litigation. Plaintiff argues the statutory duty to *examine* credit unions implies *a duty to guide the investment choices of the credit union*, should the examination disclose that the union's investment choices are improper. Moreover, plaintiff contends that the duty to examine the credit union, a duty statutorily imposed on the government, and the implied duty to guide the credit union in its operations, must be carried out with due care.

This court, in ruling on the issues presented by the case at bar, would initially note the issues in this case and the *Varig* case are distinguishable. However, there is one important similarity. Specifically, just as the FAA in *Varig* was under a statutory duty to examine airplanes, the NCUB is required to examine credit unions; and just as the primary responsibility for seeing that an airplane complies with federal safety regulations lies with the manufacturer, (*Varig*, 104 S.Ct. p. 2766), the primary responsibility for seeing that the day-to-day investment activities of a credit union comply with federal statutory regula-

tions lies with the credit union's management.

All similarities between the FAA and the NCUA end there. Unlike the FAA, which acts as a "watchdog" to insure that manufacturers are in fact complying with regulations, the NCUA acts as an insurer of credit union depositor's funds and *does not regulate member credit union's investment activities*. Thus, while the FAA in *Varig* logically has a duty to inform manufacturers when they have failed to meet regulations, because certification depends on correcting those deficiencies, the NCUA is under no such duty. The purpose of the NCUA's audit is to insure that the credit union is not a substantial risk to the insurer, the NCUA, and that it qualifies for insurance. In effect, the NCUA is not a watchdog to insure proper investment activities, but merely attempts to protect itself and the insurance fund for which it is responsible.

In *Franklin National Bank, supra,* the court found the FDIC neither had, nor assumed a duty to regulate the bank's day-to-day activities. The court based its decision, in large part, on the *purpose* for which the FDIC was originated. The court quoted from an unpublished district court opinion, *Harmsen v. Smith, aff'd,* 586 F.2d 156 (9th Cir.1978), in which the district court stated:

[T]he purpose of the examination is to judge the operations of the bank, not to detect all frauds and deficiencies for the protection of creditors and shareholders. The examination is *designed to supply the Comptroller and other government administrators with the information necessary to perform their regulatory functions.* This court concludes that the examination is not intended to create an actionable duty to the examined banks (emphasis added). *See also, FDIC v. Friedman, Heffner Kahan & Dysart,* Civ. No. 76–0510–N (S.D.Cal. April 13, 1977).

The *Franklin National Bank* court noted that the *Harmsen* decision was based on the case of *Social Security Administration Baltimore Federal Credit Union v.*

*United States,* 138 F.Supp. 639 (D.Md. 1956). That case held that no actionable duty *to credit unions* arose *from the statutory duty to examine* the credit unions. The *Franklin* court, in summing up *Harmsen* and *SSA Credit Corp.,* stated:

The reasoning of all these Courts is that the statutes requiring examination of financial institutions were primarily designed *to help the Government in its regulation of those institutions.*

Notwithstanding possible incidental *benefit to the examined banks, to hold that the examinations were therefore designed to protect the shareholders, officers or directors from any fraud at these banks would make the United States an insurer of all banking activities.* This would be an enormous liability that should not be read into the statute absent a clearer expression of congressional intent.

To the extent that the Insurance Companies further attempt to predicate a statutory duty to the bank on the entire scheme of governmental regulation of banks, this Court holds to the same effect; i.e., such regulatory scheme does not create a duty to the banks regulated and any purported failure on the part of the United States to properly regulate the FNB cannot serve as the basis of the instant third-party complaints. *The regulatory scheme is intended primarily for the benefit of the public and the common weal, not for the benefit of banks and bank directors.*

Therefore, we hold that the statutes discussed here do not impose a duty running from the United States to the FNB. (Emphasis added).

445 F.Supp. at 731.

This court concurs with the *Franklin, Harmsen,* and the *SSA Credit Corp.,* decisions and accordingly finds that the NCUA, and the United States, unlike the FAA in *Varig,* owed plaintiff no actionable duty to regulate investments as a result of its statutory examination of the credit union. This court further finds that the NCUA did not *assume* a duty to guide plaintiff's in-

vestment decisions nor did it *assume* a duty to warn plaintiff of potentially hazardous investments simply because it audited the credit union.

In *Franklin National*, third-party plaintiffs argued the FDIC had assumed a duty of care when the FDIC became involved in the bank's day-to-day operations. In the case at bar, plaintiff has not alleged a similar set of circumstances. That is, there is no allegation that the NCUA assumed a duty to guide the plaintiff's day-to-day operations since there are no facts alleged which indicate that the NCUA became involved in plaintiff's day-to-day operations. Therefore, there appears to be no basis for plaintiff's argument that NCUA assumed the duty of investment counselor, a duty it was not otherwise obligated to undertake.

Absent any indication that such a duty was assumed, the *Indian Towing* argument made by plaintiff becomes inapplicable. The court would note however, that even if there was some indication that the NCUA had become involved in plaintiff's day-to-day matters, *Indian Towing* would still be inapplicable.

In the *Franklin National Bank* litigation, the court found that no assumption of duty to regulate had been created even when the FDIC did become involved in the bank's day-to-day activities. The *Franklin* court relied on language found in the *SSA Credit Union* case in which a litigant had also argued that the duty to examine credit unions imposed an actionable duty on the Government. The *SSA* court said:

> Plaintiffs contend that even if the statute does not impose a duty on the *Bureau to make such audits for the benefit of the individual credit unions, the Bureau assumed that duty.* If it be true that the government induced the officials of the plaintiff credit union to rely on the *examinations made by the Bureau examiners, and to disregard the duties placed on the officials of the credit union by the statute, by-laws, etc., the government would be obligated to exercise reasonable care under the circumstances in the performance of what the* *plaintiff credit union* had been led to believe the government had undertaken to do. *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48. (Emphasis added).

138 F.Supp. at 648.

The *Franklin* court then noted that the language, quoted above, indicated that:

> [I]f the Government goes beyond the *normal regulatory activities and substitutes its decisions for those of the officers and directors, and if the bank and bank directors reasonably rely on these actions of the Government, the Government may assume a duty to those parties to prevent fraud* (emphasis added).

445 F.Supp. at 733–4.

Again, this court concurs with both the *SSA Credit Corp.*, opinion and the *Franklin* opinion. Plaintiffs have not alleged any facts which would indicate that NCUA, in auditing the plaintiff credit union, stepped beyond regulatory activity and substituted its decisions for those of the credit union. Nor is there any indication that the officers of plaintiff credit union relied on NCUA's decisions and abandoned all managerial activity. It is precisely NCUA's failure to substitute its investment choices for those of plaintiff's, which plaintiff complains about. Thus, any assumption of duty argument must fail.

IT IS THEREFORE ORDERED that defendant's Motion to Dismiss is GRANTED and plaintiff's complaint is DISMISSED for failure to state a claim pursuant to FED.R. CIV.P. 12(b)(6).