Kurt TEICH, Individually and as Special Administrator of the Estate of Phillip Fred Teich, Deceased, Plaintiff,

v.

UNITED STATES GOVERNMENT, United States Coast Guard, and Army Corps of Engineers, Defendants.

UNITED STATES of America, Third Party Plaintiff,

v.

CHICAGO PARK DISTRICT and Andre Murphy, Third Party Defendants.

No. 80 C 1854.

United States District Court, N. D. Illinois, E. D.

Nov. 14, 1980.

Jerrold L. Morris, Heller & Morris & Assoc. Ltd., Chicago, Ill., for plaintiff.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., Frederick J. Fraterrigo, Kralovec, Marquard, Doyle, Gibbons & Fraterrigo, Chtd., Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

This cause involves a tragic boating accident on Lake Michigan near the shores of the city of Chicago, and comes before this court on defendants' motion for summary judgment. For the following reasons, the motion is granted.

On September 7, 1978, Phillip Fred Teich was a passenger on a speedboat, allegedly owned and operated by Elizabeth Maniscalo and Andre Murphy, which was proceeding in a generally southeasterly direction on Lake Michigan near Chicago's shores, on the west side of the Montrose/Wilson beach pier, north of the landfill from which the pier extends and south of the pier's horseshoe curb. The boat collided with the Montrose/Wilson beach pier, and Phillip was thrown from the boat, suffering fatal injuries. It is alleged that at all pertinent times, he was exercising ordinary care for his own safety.

Plaintiff Kurt Teich is Phillip's father and the duly appointed administrator of his estate. Jurisdiction is predicated on the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.* Defendants are the United States Government, the United States Coast Guard, and the Army Corps of Engineers (hereinafter collectively referred to as the "United States"). The Chicago Park District and Andre Murphy were sued as third party defendants by the United States.

Count I claims that the United States is guilty of having committed various negligent acts concerning the maintenance and supervision of a navigational aid known as the Wilson Avenue Breakwater Light (hereinafter referred to as "Breakwater Light") which was located at the Montrose/Wilson beach pier. This count also claims that the United States failed to properly supervise and take action against the Chicago Park District regarding the performance of a certain agreement between the United States and the Chicago Park District concerning the Breakwater Light. Count II contains allegations of wilful and wanton misconduct on the part of the United States, and seeks punitive damages. Count III seeks to recover burial expenses, and Count IV seeks to recover damages for Phillip's pain and suffering up to his death. The answer of the United States denies all material allegations except the fact of Phillip's death, and pleads affirmative defenses.[1]

The United States filed a third party complaint against the Chicago Park District and Andre Murphy, alleging that the District owned, operated and maintained the Breakwater Light, and had agreed to hold the Coast Guard harmless from any alleged negligence in maintenance or operation of the Breakwater Light in a certain agree-

---

1. The affirmative defenses asserted by the United States are as follows:

    1. The Complaint fails to state a claim upon which relief can be granted.

    2. The Complaint names improper defendants, the United States Coast Guard and United States Army Corps of Engineers.

    3. The Complaint is based upon the exercise of a discretionary function. 28 U.S.C. § 2680(d) [sic].

    4. Decedent's negligence caused the accident.

Plaintiff moved to strike the affirmative defenses on the ground that the allegations set forth legal conclusions, thus failing to conform to the provisions of Rule 8(c), Fed.R.Civ.P. Because this memorandum disposes of the above–entitled cause in its entirety, this court need not and does not reach plaintiff's motion to strike.

ment dated March 16, 1966 and known as the Private Aid to Navigation Application (hereinafter referred to as "Application"). The Chicago Park District answered and admitted that it owned, operated, and maintained the Wilson Avenue Breakwater and the Breakwater Light, and alleged that the United States neither owned, operated, nor maintained either the Breakwater or the Breakwater Light.

The motion of the United States for summary judgment relies on the Chicago Park District's admission that it and not the United States owns and is responsible for the Breakwater Light. Because the navigational aid is private rather than public, the United States argues, it has no duty to supervise the Park District's maintenance and operation. In addition, the United States stresses that the Park District's application stated: "The applicant agrees to save the Coast Guard harmless with respect to any claim or claims that may result arising from the alleged negligence of the maintenance or operations of the approved aid[s]." Application § 11B. Plaintiff's answer to the motion claims that notwithstanding the agreement to maintain aids to navigation, the United States still owes a non-delegable duty of exercising care during the course of the operation and maintenance of aids to navigation such as the Breakwater Light. Finally, the reply of the United States reiterates that the Breakwater Light is a private, rather than public aid to navigation, for which operation the United States cannot be held responsible. · No response is made to plaintiff's argument that the United States is charged with a non-delegable duty.

Pertinent statutory provisions are those governing the Coast Guard's duties and powers. Section 81 of 14 U.S.C. authorizes public aids to navigation: "In order to aid navigation and to prevent disasters, collisions, and wrecks of vessels and aircraft, the Coast Guard *may* establish, maintain and operate" aids to navigation. (emphasis added) Section 83 requires everyone with the exception of the armed services to obtain permission from the Coast Guard prior to establishing or maintaining aids to navi-

gation. Finally, 14 U.S.C. § 2 provides in relevant part:

> The Coast Guard *shall* enforce or assist in the enforcement of all applicable Federal laws on and under the high seas and waters subject to the jurisdiction of the United States; shall administer laws and promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States covering all matters not specifically delegated by law to some other executive department; *shall develop, establish, maintain, and operate*, with due regard to the requirements of national defense *aids to maritime navigation. . . .*
> (emphasis added)

Plaintiff apparently contends that the mandatory language of Section 2 as set out above imposes a non-delegable duty on the Coast Guard to establish, maintain, and operate aids to navigation, and that no authority is granted to the United States to delegate this responsibility to local entities. The clear weight of authority, however, requires this court to conclude otherwise. The question presented by this set of circumstances is not, as plaintiff erroneously claims, one of delegation, but rather, one of discretion. The precise issue to be resolved appears to be one of first impression, and succinctly stated, it is: what duty, if any, does the United States (Coast Guard) owe to public users of a private aid to navigation?

▬ Preliminarily, as used herein, the term "private aid to navigation" includes all marine aids to navigation operated in the navigable waters of the United States other than those operated by the federal government or those operated in state waters for private aids to navigation. *Navigation and Navigable Waters,* 33 C.F.R. § 66.01–1(b) (1979). Clearly, the Breakwater Light involved herein is such an aid; there is no dispute that it is operated by the Chicago Park District in the navigable waters of Lake Michigan.

■ As a further preliminary matter, it is helpful to set forth the duty owed to public users of public aids to navigation. While the Coast Guard may establish, maintain, and operate aids to maritime navigation in accordance with 14 U.S.C. § 81, once it has established such public aids it shall maintain and operate them as provided by 14 U.S.C. § 2. *Afran Transport Company v. United States*, 309 F.Supp. 650, 654 (S.D.N. Y.1969), *aff'd* 435 F.2d 213 (2d Cir. 1970), *cert. denied*, 404 U.S. 872, 92 S.Ct. 72, 30 L.Ed.2d 116. Thus, the establishment and placement of aids to navigation is a discretionary function vested in the Coast Guard. *Bearce v. United States*, 614 F.2d 556, 560 (7th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 112, 66 L.Ed.2d 44; *Gercey v. United States*, 540 F.2d 536 (1st Cir. 1976), *cert. denied*, 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977). Once the Coast Guard has exercised its discretion to establish an aid to navigation, however, it is obligated to use due care to maintain it. *Indian Towing Co., Inc. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48 (1955); *Richmond Marine Panama, S. A. v. United States*, 350 F.Supp. 1210 (S.D.N.Y.1972). The duty when undertaken must be carried out without negligence. *Afran Transport*, 309 F.Supp. at 654.

It cannot be disputed that establishment of private aids to navigation is congressionally authorized. Pursuant to 14 U.S.C. § 83, no person, public body, or instrumentality, excluding the armed services, may establish, erect, or maintain an aid to navigation without permission of the Coast Guard. *Afran Transport*, 309 F.Supp. at 654. In accordance with 14 U.S.C. § 85, the Secretary of Transportation is empowered to prescribe and enforce rules and regulations relating to the establishment, maintenance, and operation of private aids to navigation. *Navigation and Navigable Waters*, 33 C.F.R. § 1.050–1 (1979).

In this case, plaintiff does not argue that establishment of private aids to navigation is impermissible, nor does he argue that the Chicago Park District's Application concerning the Breakwater Light aid to navigation in some way failed to comply with relevant regulations. Rather, plaintiff attempts to impose vicarious liability on the United States (Coast Guard) for allegedly negligent operation and maintenance of the Breakwater Light, a private aid to navigation, and liability as well for alleged failure to adequately supervise the Chicago Park District's operation and maintenance of the Breakwater Light.

The difference with which the Coast Guard treats public, as opposed to private, aids to navigation [2] may be summarized as follows:

There is quite a difference between what the Coast Guard does with a federally owned aid and a privately owned aid. In the context of a federally owned light, the Coast Guard builds the tower on which the light is placed, places the light equipment on the tower, and we operate the light. A Coast Guard unit is assigned responsibility for the light, and that unit or another Coast Guard unit performs all functions involved in operating and maintaining the light. This could typically include replacing light bulbs, inspecting and replacing batteries or monitoring electrical power lines, painting or repairing the tower and repairing vandal or storm damage. It also includes restoring the light to proper function if it is extinguished for any reason. These responsibilities could result in numerous visits to the light each year by Coast Guard personnel. The Coast Guard maintains complete records of the history and servicing of federally owned lights.

On the other hand, our involvement with private aids to navigation is much more limited. The Coast Guard does not construct the tower or otherwise establish the light; the non-federal owner establishes the light. The Coast Guard does not operate or maintain a private aid. We perform no repairs, servicing or maintenance on it. If a private light is extin-

---

2. According to the Coast Guard's records, there are approximately 3,000 federally owned aids and 1,700 private aids in the Great Lakes. Affidavit of Charles A. Millradt, p. 2.

guished, we do not send Coast Guard personnel out to fix it and restore its operation. These functions are totally the responsibility of the owner. Our files on private aids are much less extensive than our files on federally owned aids, because information such as servicing schedules and maintenance actually performed is not available to the Coast Guard. Affidavit of Charles A. Millradt, Captain, U. S. Coast Guard, Chief, Aids to Navigation Branch, Ninth Coast Guard District, dated August 13, 1980, pp. 2–3.

The foregoing facts are taken as true for purposes of the motion of the United States for summary judgment, because plaintiff has neither offered counteraffidavits nor has he demonstrated the existence of any genuine issue of material fact. *Winrod v. McFadden Publications, Inc.*, 62 F.Supp. 249 (N.D.Ill.1945). In *2361 State Corp. v. Sealy, Inc.*, 402 F.2d 370, 375 (7th Cir. 1968), this Circuit's standard under Rule 56, Fed.R. Civ.P. was stated to be that the party opposing summary judgment does not have the burden of showing that there is a genuine issue until the movant has produced evidentiary material showing that there is no genuine issue as to any material fact and he is entitled to judgment as a matter of law. Applying that rule to the present posture of this case, the court concludes that plaintiff has failed to meet the burden thus imposed. Consequently, the facts demonstrated by the United States are properly taken as true.

A simple solution to the issue previously framed would be to rule that because the United States (Coast Guard) did not establish a public aid at the location of the Breakwater Light, that it could not be liable, in that the choice not to establish a Breakwater Light is discretionary. However, such a ruling would ignore plaintiff's remaining argument regarding the United States' alleged duty to supervise the Chicago Park District. Thus, it is necessary to consider the legal relationship created be-

tween the Chicago Park District and the United States because of the Application previously mentioned.

■ Review of the relevant statutory and regulatory provisions reveals that the Chicago Park District, by reason of its Application, is best characterized as a permit holder. In accordance with 33 C.F.R. § 66.01–3 and § 66.01–5 (1979), the Coast Guard has the authority to grant permission to applicants who have complied with the requisite formalities to establish and maintain private aids to navigation. As a permit holder, the Chicago Park District is required to maintain its private aids to navigation in proper operating condition. 33 C.F.R. § 66.01–20 (1979). Private aids to navigation are subject to inspection by the Coast Guard at any time, without notice. *Id.* Inspection, therefore, is discretionary on the part of the Coast Guard, as must be supervision of a permit holder's compliance with the requirement that proper operating conditions be maintained.[3] Neither statutory nor regulatory law imposes upon the United States (Coast Guard) the duty to supervise a permit holder. The decision whether to do so:

> involves a basic policy judgment as to how the public interest may best be promoted. The Coast Guard has limited resources and a myraid of regulatory responsibilities. A determination whether it would be in the public interest to make a major commitment of the Coast Guard's resources . . . would require consideration of a host of facts . . . The critical question . . . is whether a federal court has the power to impose liability on the Coast Guard for failing to make, and implement, the basic policy decision that the public interest requires its limited resources be committed to such a program [of supervision]. *Gercey v. United States*, 540 F.2d at 538–39.

A basic policy judgment such as extent and frequency of supervision must be left to the body best able to make it—in this case, the Coast Guard.

---

**3.** It is worth noticing the Coast Guard's records reflecting an inspection of the Breakwater Light made only a few months before the acci- dent, on June 5, 1978. Affidavit of Charles A. Millradt, p. 3.

Policy judgments as to the public interest involve a discretionary function. *See Griffin v. United States*, 500 F.2d 1059, 1064 (3rd Cir. 1974). Because this action was brought under the Federal Tort Claims Act, and because the Act does not apply to claims based on discretionary functions, the above–entitled cause fails to state a claim upon which relief may be granted. 28 U.S.C. § 2680(a).[4] Therefore, this case is dismissed in its entirety.

So ordered.

---

**4.** Because a discretionary function exception is implied in the Suits in Admiralty Act, the same result would be obtained there. *Bearce v. United States*, 614 F.2d at 559. Thus, propriety of proceeding under FTCA as opposed to SIAA in these circumstances need not be addressed.