**BALMACEDA, et al.**

v.

**UNITED STATES of America.**

Civ. A. No. 92–0907.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 1992.

Edward W. Madeira, Jr. and Robert L. Hickock, Pepper, Hamilton & Scheetz, Philadelphia, PA, for plaintiffs in Nos. 92–0907, 92–1204, 92–1208 and 92–1279.

Phyllis J. Pyles, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, DC, for defendants in Nos. 92–0907, 92–1204, 92–1208, 92–1279, 92–2818 and 92–4057.

Kirk M.H. Lyons, Walker & Corsa, Hoboken, NJ, for plaintiff in No. 92–2818.

**824**

Albert C. Oehrle, Norristown, PA, and Kurt W. Hallock, Clark & Hallock, San Diego, CA, for plaintiff in No. 92–4057.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court is the defendant United States of America's Motion to Dismiss the five consolidated actions brought under the Federal Tort Claims Act.[1] These actions allege that the Food and Drug Administration ("FDA") negligently performed cyanide testing which resulted in the denial of Chilean fruit into the United States. Defendant moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## FACTUAL BACKGROUND

According to the complaints, taken as true under Fed.R.Civ.P. 12(b), the events which provoked the Chilean grape scare began on Thursday, March 2, 1989.[2] On that day, the United States Embassy in Santiago, Chile, received an anonymous telephone call. The caller reported that Chilean fruit exported to the United States would be injected with cyanide. (Complaint, ¶ 9). All Chilean fruit was detained during the weekend of March 4th and 5th while federal authorities considered the seriousness of the threat. (Complaint, ¶ 10). The FDA concluded after an investigation that the call was a hoax. (Complaint, ¶ 11).

On March 7, 1989, the U.S. Embassy received another anonymous call. This time the caller stated that unidentified fruit had been injected with cyanide. The Embassy was told that the caller had access to orchards, storage facilities and shipping locations in Chile. (Complaint, ¶ 13). On March 11, 1989, in response to the second call, the FDA's Philadelphia District Office doubled its inspection efforts with respect to fruit imported from Chile. The "Almeria Star" was the first vessel subjected to the increased inspection procedures. (Complaint, ¶ 14). Government inspectors examined fruit in sealed holds and transferred any suspected fruit to the FDA's Philadelphia District Office laboratory for testing.

On March 12, 1989, the FDA reported the discovery of two grapes taken from the "Almeria Star" that appeared to have puncture holes and discoloration. (Complaint, ¶ 16). Further, examination produced one additional grape that had what appeared to be a small incision or slit. Investigators sent the grapes along with the crate from which they came to the Philadelphia laboratory where the FDA tested the two punctured grapes. The performed tests purported to detect the presence of cyanide. (Complaint, ¶ 18).

On March 13, 1989, the FDA denied importation of any Chilean fruit, forced the withdrawal of all Chilean fruit in the distribution process and issued a press release that announced the presence of cyanide in the two Chilean grapes and urged consumers and sellers to destroy Chilean fruit in their possession.

The plaintiffs include United States importers, Chilean exporters and Chilean fruit growers. The complaints allege that the FDA negligently performed the testing for cyanide.

## DISCUSSION

The threshold question before the Court is whether there is subject-matter jurisdiction in light of the discretionary function exception of the Federal Tort Claims Act. 28 U.S.C. § 2680(a). To defeat the exception's application, the plaintiffs argue that the FDA did not have the discretion to remove fruit from commerce under § 381(a) of the Federal Food Drug and Cosmetics Act unless it specifically found each article to be adulterated. 21 U.S.C. § 381(a). Plaintiffs argue

---

**1.** The following complaints have been consolidated under the lead case of *Balmaceda, et al. v. United States of America,* C.A. No. 92–0907:

    (1) *Compania Sud Americana De Vapores v. United States,* C.A. No. 92–1208;

    (2) *Carben, Inc. v. United States,* C.A. No. 92–1204;

    (3) *New Market Invest Corp. v. United States,* C.A. No. 92–1279; and

    (4) *Fisher Bros. Sales, Inc. v. United States,* C.A. No. 92–2818;

**2.** Due to the similarities of the complaints, the parties have focused their arguments on the factual allegations as pled in the complaint of *Balmaceda, et al. v. United States,* C.A. No. 92–0907.

that any finding of adulteration by the FDA could not be extended beyond that fruit which is appropriately represented by samples. Thus, plaintiffs contend that the FDA in taking action against unexamined fruit did not act within its discretion. They also contend that the FDA did not have the discretion to act given alleged negligent violations of a procedures manual which provides instructions on testing procedures within the FDA laboratory.

▮ It is axiomatic that the United States may not be sued unless there is an unequivocal waiver of sovereign immunity. *United States v. Nordic Village, Inc.,* —— U.S. ——, ——, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992); *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). In the absence of such an express waiver, federal courts lack subject-matter jurisdiction to hear a claim for damages against the United States. *City of Garland v. Zurn Industries, Inc.,* 870 F.2d 320, 326 (5th Cir.1989). Plaintiffs initiate their claims for relief under § 1346(b) of the Federal Tort Claims Act ("FTCA" or "the Act") 28 U.S.C. § 1346(b). The Act provides for a limited waiver of immunity with respect to certain tort claims committed by United States employees.[3] However, as the "exceptions" to the FTCA make clear, Congress' waiver of sovereign immunity under § 1346(b) was never intended to extend to all "tort" claims brought against the United States. *United States v. Varig Airlines,* 467 U.S. 797, 808, 104 S.Ct. 2755, 2761, 81 L.Ed.2d 660 (1984); 28 U.S.C. § 2680 (exceptions to FTCA). Any government action satisfying the requirements of any exception to the FTCA as codified in § 2680 still enjoys the protection of the doctrine of sovereign immunity. *General Public Utilities Corp. v. United States,* 745 F.2d 239, 242 (3d Cir.

1984), *cert denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985).

The exception at issue in the instant cases is § 2680(a), the "discretionary function" exception.[4] This section provides that the United States is not liable for:

> any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). In enacting the FTCA, Congress stated that this "highly important exception" was

> designed to preclude application of the bill to a claim against a regulatory agency, ... based upon an alleged abuse of discretionary authority by an officer or employee, whether or not negligence is alleged to have been involved ... The bill is not intended to authorize a suit for damages to test the validity of, or provide a remedy on account of, such discretionary acts, even though negligently performed and involving an abuse of discretion.

H.R.Rep. No. 1287, 79th Cong., 1st Sess. 5–6 (1945).

In *United States v. Gaubert,* 499 U.S. 65, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), the Supreme Court outlined the requisites for a complaint to survive a motion to dismiss under the discretionary function exception. The Supreme Court stated:

> [f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged ac-

---

**3.** § 1346 United States as defendant:

(b) ... the district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act of omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person would be liable to the claimant in

accordance with the law of the place where the act or omission occurred.

**4.** Other relevant exceptions under 28 U.S.C. § 2680 include:

(c) "Any claim arising in respect of ... the detention of goods or merchandise by any officer of customs or excise or any other law enforcement officer."

(h) "Any claim arising out of ... misrepresentation."

tions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

—— U.S. at ——–——, 111 S.Ct. at 1274–75. When applicable regulations provide federal employees with discretion, it must be presumed that an action taken under the regulation is cloaked within the policies upon which the regulation was established. *Id.* —— U.S. at ——, 111 S.Ct. at 1274. "A discretionary act is one that involves choice or judgment; there is nothing in that description that refers exclusively to policy making or planning functions." *Id.* —— U.S. at ——, 111 S.Ct. at 1275. If the Court finds that discretionary actions are grounded in the policies of the agency's regulations, the agency is protected by the discretionary function exception.

■ Under this analysis, negligence is not a consideration. *General Public Utilities Corp. v. United States,* 745 F.2d 239, 243 (3d Cir.1984), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1227, 84 L.Ed.2d 365 (1985). Therefore, the Court cannot consider alleged violations of a laboratory procedures manual because this argument simply is the basis of the plaintiffs' claim of negligence. The proper focus under the discretionary function exception is on the discretion provided by the regulations, statutes and policies of the FDA. *Gaubert,* —— U.S. at ——, 111 S.Ct. at 1274.

The mission of the FDA is the protection of public health. *United States v. Bacto-Unidisk,* 394 U.S. 784, 798, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969). The enforcement provisions of the Federal Food, Drug, and Cosmetics Act ("FFDCA"), 21 U.S.C. §§ 301–394, "commit complete discretion to the Secretary to decide how and when they should be exercised." *Heckler v. Chaney,* 470 U.S. 821, 835, 105 S.Ct. 1649, 1658, 84 L.Ed.2d 714 (1985). The FFDCA prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated ..." 21 U.S.C. § 331(a). The FFDCA classifies food as adulterated when the food "bears or

contains any poisonous or deleterious substance which may render it injurious to health ..." 21 U.S.C. § 342(a)(1). The authority to ensure that imported foods meet the standards set by the Act has been delegated from the Secretary of Health and Human Services to the FDA. 21 C.F.R. § 5.10(a)(1).

■ The FFDCA permits the Secretary of Health and Human Services to request samples of food which are being imported or offered for import into the United States. 21 U.S.C. § 381. However, it does not require such action. Section 381(a), in pertinent part, provides:

The Secretary of the Treasury shall deliver to the Secretary of Health and Human Services, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Secretary of Health and Human Services and have the right to introduce testimony ... If it appears from the examination of such samples or otherwise that ... (3) such article is adulterated, misbranded, or in violation of section 355 of this title, then such article shall be refused admission, except as provided in subsection (b) of this section. The Secretary of the Treasury shall cause the destruction of any such article refused admission unless such article is exported, under regulations prescribed by the Secretary of the Treasury, within ninety days of the date of notice of such refusal or within such additional time as may be permitted pursuant to such regulations. Clause (2) of the third sentence of this subsection shall not be construed to prohibit the admission of narcotic drugs the importation of which is permitted under the Controlled Substances Import and Export Act [21 U.S.C.A. § 951 et seq.].

21 U.S.C. § 381(a). Further, the plain language of § 381 of the FFDCA does not limit the FDA in its determination of adulteration solely by an examination of samples. As § 381 provides, the FDA may refuse admission of food into the United States "[i]f it appears from the examination of such sam-

ples or otherwise that ... such article is adulterated ..." 21 U.S.C. § 381. (emphasis added). Therefore, the language of the statute clearly affords the FDA with the discretion to act without requesting or relying on the results of the testing of samples.

 Under this authorization, FDA had the discretion to act during the Chilean grape crisis. The FDA acted to protect the public from the risk of exposure to poisonous fruit which it learned could be coming from Chile. It had the discretion to test the fruit and determine whether the fruit was adulterated. It also had the discretion to refuse entry into the United States. The actions taken were not violative of any regulatory or statutory provisions. The acts taken were in accordance with the FDA's authority to determine whether or not a specific product should be allowed entrance into the United States. This conduct is grounded in the policy of protecting the public health. The actions were clearly in furtherance of the FDA's statutory mission to protect the American public from adulterated food. All the acts involved judgment and choice and were grounded in policy.

Accordingly, the FDA is protected by the discretionary function exception of 28 U.S.C. § 2680(a). Therefore, the Court lacks subject-matter jurisdiction.

An appropriate Order follows.

### FINAL JUDGMENT

AND NOW, this 29th day of December, 1992, upon consideration of Defendant United States of America's Motion to Dismiss and the responses thereto, IT IS HEREBY ORDERED that Defendant's Motion is GRANTED.

IT IS FURTHER ORDERED that the following Complaints are DISMISSED WITH PREJUDICE:

(1) *Compania Sud Americana De Vapores v. United States,* Civil Action No. 92–1208;

(2) *Carben, Inc. v. United States,* Civil Action No. 92–1204;

(3) *New Market Invest Corp. v. United States,* Civil Action No. 92–1279; and

(4) *Fisher Bros. Sales, Inc. v. United States,* Civil Action No. 92–2818.