ROTH, Circuit Judge,
dissenting: Judges BECKER, HUTCHINSON, SCIRICA, LEWIS and McKEE join in the dissent.
I respectfully dissent from the conclusion reached by the majority. I cannot accept cloaking a decision, which results from negligently performed laboratory work, with the discretionary function exception under circumstances in which the decision maker would expect, first, that the laboratory work will be performed under scientifically recognized and accepted techniques and, second, that further actions by the decision maker will be governed by the results of that testing.
Because I conclude that such circumstances have been alleged by the plaintiffs in their complaint, I find it improper for the district court to have dismissed the complaint on the basis of the discretionary function exception.
In ruling on defendants’ motions to dismiss, the district court focused on the conduct of the FDA as a whole. It conducted an analysis of the statutes and regulations governing the FDA, and concluded that
[ujnder this authorization, FDA had the discretion to act during the Chilean grape crisis. The FDA acted to protect the public from the risk of exposure to poisonous fruit which it learned could be coming from Chile. It had the discretion to test the fruit and determine whether the fruit was adulterated. It also had the discretion to refuse entry into the United States. The actions taken were not violative of any regulatory or statutory provisions. The acts taken were in accordance with the FDA’s authority to determine whether or not a specific product should be allowed-entrance into the United States. This conduct is grounded in the policy of protecting the public health. The actions were clearly in furtherance of the FDA’s statutory mission to protect the American public from adulterated food. All the acts involved judgment and choice and were grounded in policy.
Balmaceda v. United States, 815 F.Supp. 823, 827 (E.D.Pa.1992). The district court *289 declined to “consider alleged violations of a laboratory procedures manual because this argument simply is the basis of the plaintiffs’ claim of negligence.” Id. at 826.
I believe, however, that, in analyzing the actions taken here by the FDA, one must consider carefully whether it is implicit in the order for tests to be performed that the tests are both scientifically accepted and reliable. If it is implicit, I would not extend the discretionary function exception to actions which predictably follow from the test results. The discretionary function exception should not protect an official’s decisions, brought about by the results of accepted and reliable tests, just as it will not protect an official’s release of a noncomplying lot of polio vaccine. See Berkovitz by Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988).
Moreover, if actions are taken as a result of accepted and reliable testing, they may no longer be the product of independent judgment. The determination to order testing involved the element of choice. However, it is not clear from the record before us whether any significant discretion to choose remained after the decision to test or whether a positive test result would implicate a concomitant decision to withdraw the fruit from the market. If plaintiff can prove the existence of such inevitability, the discretionary function exception may no longer be implicated. Accord Westfall v. Erwin, 484 U.S. 292, 296-97, 108 S.Ct. 580, 584, 98 L.Ed.2d 619 (1988) (“When an official’s conduct is not the product of independent judgment, the threat of liability cannot detrimentally inhibit that conduct.”).
I do not question the majority’s conclusion that the Commissioner’s action in ordering the testing was discretionary. I believe, however, that the majority’s view of the case misapprehends the precise nature of plaintiffs’ claims under the FTCA. Plaintiffs do not argue that the initial decision to test was not a protected discretionary function. What plaintiffs do argue is that the decision to withdraw Chilean fruit from the market was proximately caused by the positive test results. Plaintiffs contend that the tests performed by the FDA’s Philadelphia laboratory were negligently performed in that the procedures used conformed neither to the FDA’s Regulatory Procedures Manual nor to good laboratory practices. Their complaints allege that, “as a result of the negligent analysis performed and reported by the Philadelphia laboratory, the FDA decided to take three actions: 1) refusing entry into the United States of all Chilean fruit; 2) forcing a market withdrawal of all Chilean fruit already in distribution channels; and 3) issuing a press release informing consumers to refrain from eating Chilean fruit.” Joint Appendix at 169. Thus, plaintiffs do not challenge the FDA Commissioner’s decisions to test fruit from Chile or, based upon properly performed testing, to take action to remove all Chilean fruit from the marketplace.
Because we are considering a motion to dismiss, we must accept as true all of the factual allegations in the complaints. Berkovitz, 486 U.S. at 540, 108 S.Ct. at 1961. For present purposes, there was no cyanide in the grapes, the FDA technicians were negligent in reaching the conclusion that there was cyanide contamination, and this negligence was the cause-in-fact and proximate cause of the damage to plaintiffs. Moreover, there is no contention here that the actions of the laboratory technicians, in testing the grapes, involved the permissible exercise of policy judgment. The technicians are not protected by the exception.
In Berkovitz, the Supreme Court stated that “the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive.” Id. at 536, 108 S.Ct. at 1958-59. In this case, the plaintiffs allege that the Regulatory Procedures Manual established procedures to be followed for tests such as those performed at the Philadelphia lab and provided that any modification to those procedures be reduced to writing. Plaintiffs contend that the lab technicians violated the manual’s specific instructions in failing to reserve portions of the two punctured grapes for confirmatory testing and in failing to make contemporaneous records of their observations.
*290 The majority speculates that, after receiving the test results, the Commissioner was required to make a judgment about the conflicting findings of the Philadelphia and Cincinnati laboratories and to judge the significance of the Philadelphia laboratory’s failure to follow established procedures. See Majority page 285. These contentions, however, do not appear in the complaint. In the record before the district court on the motion to dismiss, such speculation would be inappropriate. Plaintiffs’ allegations do,. however, permit the conclusion that the decision to withdraw Chilean fruit from the market followed as a result of the negligent testing.
I find that such an allegation satisfies the pleading requirements of Berkovitz. Moreover, in Berkovitz, which concerned, inter alia, a claim that the Division of Biologic Standards (DBS) of the National Institutes of Health had wrongfully licensed the production of a polio vaccine, the Court made the following observation:
If petitioners’ claim is that the DBS made a determination that [the vaccine] complied with regulatory standards, but that the determination was incorrect, ... the question turns on whether the manner and method of determining compliance with the safety standards at issue involve agency judgment of the kind protected by the discretionary function exception. Petitioners contend that the determination involves the application of objective scientific standards, ... whereas the Government asserts that the determination incorporates considerable “policy judgment”_ In making these assertions, the parties have framed the issue appropriately; application of the discretionary function exception to the claim that the determination of compliance was incorrect hinges on whether the agency officials making that determination permissibly exercise policy choice.
Id. at 544-45, 108 S.Ct. at 1963 (footnote omitted). As this passage makes clear, judgment guided purely by scientific or other objective principles does not involve discretion for purposes of the discretionary function exception. See also Griffin v. United States, 500 F.2d 1059, 1066 (3d Cir.1974) (“Where the conduct of Government employees in implementing agency regulations requires only performance of scientific evaluation and not the formulation of policy, we do not believe that the conduct is immunized from judicial review as a ‘discretionary function.’ ”); Ayala v. United States, 980 F.2d 1342, 1349-50 (10th Cir.1992) (“We fail to see how the determination in this case can be labeled a policy decision. The choice was governed, as plaintiffs contend, by ‘objective principles of electrical engineering.’ ”).
In Berkovitz, the specifications for licensing vaccine or releasing lots of vaccine had been incorporated in procedures and regulations. In the present ease, the Commissioner did not have specific procedures established for handling fruit to determine if it had been contaminated. Nevertheless, the plaintiffs allege that the technicians’ sole purpose in testing the suspect grapes was to determine whether they had been injected with cyanide. Appellants’ claim that the technicians were provided with precise, objective, scientific standards to use in the testing. Any decisions made in the course of testing concerning what portions of the grapek to test or how to conduct the tests should have been made solely with reference to these principles of science. I am not persuaded that this situation is significantly different from that in Berkovitz.
Social, economic, and political factors— those involved in the kinds of decisions Congress intended, to shield from liability — had no place in the decision making process once the Commissioner decided to order testing. Consequently, if the district court were to adjudicate this case as it is alleged .in the complaint by plaintiffs, the court would not be “second-guessing” a policy-based decision. Instead, by measuring the technicians’ conduct against the procedures they were to have followed and principles of good laboratory practice, it would be undertaking the sort of inquiry that courts are called on to make all the time.
Moreover, I do not find it significant that the conduct challenged here was embedded within the clearly discretionary consideration of whether to test incoming fruit or to remove all Chilean fruit from the market. With respect to the decision to test fruit in *291 the first place, I am guided by the body of law “holding that once the government makes a policy decision protected by the discretionary function exception, it must proceeds with due care in the implementation of that decision.” Caplan v. United States, 877 F.2d 1314, 1316 (6th Cir.1989). This line of cases has grown out of the Supreme Court’s decision in Indian Towing Co., Inc. v. United States, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), which concerned an action against the Coast Guard for negligent operation of a lighthouse. The Court stated:
The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a fight on Chandeleur Island and engendered reliance on the guidance afforded by the fight, it was obligated to use due care to make certain that the fight was kept in good working order; and, if the fight did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the fight or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was thereby caused to petitioners, the United States is liable under the Tort Claims Act.
Id. at 69, 76 S.Ct. at 126-27. In this case, once the FDA exercised its discretion to test incoming Chilean fruit, it incurred the obligation to use due care in doing so.
Nor am I led to a different result by the fact that the alleged negligence in the laboratory was followed by a decision that was, at the very least, a “but for” cause of the harm to plaintiffs.[1] I am not persuaded by the majority’s contention that the possibility of liability will have an undesirable effect on policymakers who find themselves in a position analogous to that of the FDA Commissioner in this case. Because there is an obligation to use due care in operating a lighthouse or licensing a polio vaccine or testing a grape for cyanide, decisions arising from the execution of that duty must be based upon the proper performance of that duty. The desired result is that the purely technical aspects of any such decision will be properly conducted. If there is a chilling effect, as the majority fears there will be, the chill must be directed to ensure the non-negfigent operation of the lighthouse or the non-negfigent licensing of the polio vaccine or the non-negfigent examination of the grapes. Just as the requirements for licensing a polio vaccine are discretionary but the steps to determine that a particular batch of vaccine is properly licensable are not discretionary, so too the removal from the market of cyanide-contaminated grapes may be discretionary but the proper performance of established tests to detect the contamination is not.
In effect, I see no reason to believe that a finding of liability against the government in this case would have consequences of a different nature or to a greater extent than a finding of liability against the government in either Indian Towing or Berkovitz. When an official makes a policy decision — to build a lighthouse or to license a vaccine or to remove fruit from the market — the possibility of tort liability may factor into the analysis. However, the focus of that consideration should be the ability of the government to perform the tasks which follow from the decision to implement the action. If the government agency cannot reasonably expect to be *292 able non-negligently to operate a lighthouse or to license a vaccine or to test a grape for cyanide, this factor should be considered in instituting the line of action in the first place. If testing grapes for cyanide were difficult or the results of such testing not rehable, the Commissioner might better exercise his discretion by withdrawing grapes from the market without having them tested. However, once the decision was made to do the testing, the discretionary function exception should not protect the government from the consequences of the negligence of the laboratory technicians in performing their routine duties.
For the above reasons, I would reverse the dismissal of this case by the district court and would remand it for further proceedings.

. While I suspect that plaintiffs may encounter difficulty in attempting to prove that the alleged negligence of the lab technicians, rather than the Commissioner’s decision, was the proximate cause of their injuries, I cannot allow that perception to color my analysis here. Instead, I must accept the allegations in plaintiffs' complaints as true. Those allegations are directed at harm allegedly caused to plaintiffs by the negligent testing. The district court may appropriately consider causation in subsequent stages of these proceedings, such as in deciding whether to grant a motion for summaiy judgment. See Appley Brothers v. United States, 7 F.3d 720, 725 and n. 2 (8th Cir.1993) (Reversing district court’s dismissal of suit, pursuant to discretionary function exception, on ground that plaintiffs based their claim on Department of Agriculture’s negligent inspection of warehouse rather than on USDA’s decision whether or not to revoke warehouse license; as to the issue of causation, the court of appeals held that the "question of whether appellants failed to state a cause of action was not before the district court, and is not an issue in this appeal."). I believe, however, that the factor of causation has no place in my consideration of whether the discretionary function exception applies to plaintiffs’ allegations as they are presently expressed in the complaint.